Argued and submitted December 17, 1986, reversed and remanded with instructions
July 8, 1987

In the Matter of the Compensation of
Richard A. Johnson, Claimant.

JOHNSON,
*Petitioner,*

*v.*

CITY OF ROSEBURG et al,
*Respondents.*

(WCB No. 84-00831; CA A38383)

739 P2d 602

Linda Love, Portland, argued the cause for petitioner. On the brief was Peter W. McSwain, and Francesconi & Cash, P.C., Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant seeks review of a Workers' Compensation Board order that denied his occupational disease claim. We reverse. Claimant, age 46, was a fire fighter for 23 years with the City of Roseburg. He worked as an engineer during the last 10 years of his employment, but he continued to go out on fire calls. He has averaged one fire call every two-and-one-half weeks. He used primitive respiratory equipment during the early years of his fire fighting. He would frequently remove his mask during the clean-up phase of a fire to obtain better visibility. On many occasions, after fighting a fire, he would cough up black sputum for several days. He has smoked from one to two packs of cigarettes a day since he was 14 or 15 years old.

In February, 1980, claimant had an x-ray which showed that he did not have lung cancer, but in November, 1983, Dr. Bilder diagnosed squamous cell carcinoma of the left lung. Claimant underwent a left pneumonectomy and subsequently received chemotherapy. In January, 1984, SAIF denied his claim for left lung cancer. In December, 1984, the referee set aside SAIF's denial:

> "From the evidence presented, I find that it is medically probable that the major contributing cause of the claimant's lung cancer was voluntarily ingested cigarette smoke. However that is not the test in this case. The test in this case is whether SAIF has shown by clear and convincing evidence that claimant's work exposure did not contribute to the cancer. This SAIF has failed to do. Therefore the claim is compensable."

The Board reversed and reinstated the denial:

> "[W]e are convinced that SAIF has shown that it is highly probable that employment exposure to smoke and other byproducts of combustion in the course of claimant's employment did not contribute to claimant's disease. Therefore, we find the evidence is clear and convincing that claimant's occupational exposure to byproducts of combustion did not contribute to the cause of his lung cancer. Accordingly, we reverse the Referee's order."

ORS 656.802 provides, in part:

> "(1) As used in ORS 656.802 to 656.824, 'occupational disease' means:

"\* \* \* \* \*

"(b) Death, disability or impairment of health of fire fighters of any political division who have completed five or more years of employment as fire fighters, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as fire fighters.

"(2) Any condition or impairment of health arising under paragraph (b) of subsection (1) of this section shall be presumed to result from a fire fighter's employment. However, any such fire fighter must have taken a physical examination upon becoming a fire fighter, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted employment. Denial of a claim for any condition or impairment of health arising under paragraph (b) of subsection (1) of this section must be on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the fire fighter's employment."

Claimant has established the facts which give rise to the presumption that his cancer results from his employment. ORS 656.802(1)(b)(2).[1] SAIF, therefore, must produce clear and convincing medical evidence that the cause of the cancer is "unrelated" to his employment. *See Wright v. SAIF,* 289 Or 323, 332, 613 P2d 775 (1980).

Although we do not agree with the Board's conclusions about the medical evidence, it accurately summarized the content of that evidence:

"Dr. Gordon, the thoracic surgeon who performed claimant's pneumonectomy, opined that exposure to fire smoke had not been shown to be a significant cause of lung cancer and that claimant's condition was due to his cigarette smoking. Dr. Shafer, the radiation oncologist who treated claimant after surgery, opined that it was conceivable that claimant's occupation contributed to his condition as compared to his

---

[1] Claimant established that (1) he has a "disability or impairment of health," ORS 656.802(1)(b); (2) he was employed as a fireman of a political division; (3) he has completed more than five years of employment in that capacity; (4) a disease of his lungs caused his disability or impairment; and (5) he had had a physical examination subsequent to his becoming a fire fighter "which failed to reveal any evidence of such condition of impairment of health which preexisted [his] employment." ORS 656.802(1)(b).

cigarette smoking exposure. Dr. Bilder, the pulmonary specialist who diagnosed claimant's lung cancer and who had four years experience as a volunteer fireman, reported that he had never seen the type of cancer that claimant had in a person who did not smoke cigarettes and opined that claimant's cancer was due to cigarette smoking. Dr. Hansen, the pulmonary specialist who examined claimant for the insurer, opined that claimant's squamous cell cancer was due to cigarette smoking and was not related to his occupation. Dr. Bendix, who holds a Ph.D. in physiochemical biology with a special interest in toxic substance exposures and who reviewed claimant's medical reports, opined that claimant's occupation had caused him additional unprotected exposure to carcinogenic byproducts of combustion and that his occupation had, therefore, contributed to the causation of his lung cancer."

The opinions of Gordon and Shafer indicate that claimant's employment may have contributed to his lung cancer and, accordingly, are not evidence that the cause of his cancer was "unrelated" to his employment. Moreover, Bendix's report, which includes an analysis of specific carcinogenic substances to which claimant was actually exposed at various fires, concluded that "[i]t is probable that [claimant's] professional work caused or at least contributed to his lung cancer."

Although Bilder and Hansen assert that claimant's employment was not a causal factor, their opinions are based primarily on a report by an industrial hygienist for SAIF. That report summarizes the results of several studies on the relationship between fire fighting and lung disease.[2] None of those studies, with the possible exception of a study of Boston fire

---

[2] The report, prepared by a person named Natsch, included this summary:

"1. The mortality experience of 5655 Boston fire fighters since 1915 was examined. The standard mortality rate for neoplastic deaths (cancer) was 83%. In other words, it was below the expected rate for the general population.

"2. A study of 193 subjects of the New South Wales Fire Brigade concluded that the major combustion products responsible for respiratory damage were self-administered, arising from burning tobacco rather than from burning buildings.

"3. A study of pulmonary function of 54 fire fighters from Connecticut concluded that cigarette smoking appeared to be a major contributor to obstruction of airways in fire fighters.

"4. A 1982 article suggests that fire fighters are at a higher risk of suffering some decrease in pulmonary function. However, evaluation of data suggests that smokers, regardless of occupation, are at a greater risk."

fighters, concludes that fire fighting is unrelated to lung cancer. Bendix's report[3] questions the methodology and conclusions of the Boston study.

SAIF has failed to produce clear and convincing evidence that the cause of claimant's lung cancer is unrelated to his employment.

Reversed and remanded with instructions to reinstate referee's order.

---

[3] Bendix's comments are:

"[Natsch's report] lists products of combustion found in cigarette smoke, including vinyl chloride, acrylonitrile, benzol(a)pyrene and cadmium. Fire fighter exposure to these substances was documented in my original report on the subject case. Many of the substances listed for the particulate phase are polyaromatic hydrocarbons expected to be present whenever something organic burns, i.e., at virtually every fire of every type. The chemistry of cigarette smoke has been more intensively studied than any other smoke. There is no reason to expect more carcinogens in cigarette smoke than in other smokes. A fire fighter who is a heavy cigarette smoker has still received a heavier work smoke carcinogen exposure during his fire fighting career. The occupational exposure is therefore a more probable cause of his lung cancer than his cigarette smoking."

As to the Boston study, she states:

"This study was not designed to reveal whether a 'healthy worker effect' exists for cancer in fire fighters. Fire fighter mortality was compared to the mortality of all Massachusetts and all U.S. males rather than to a control group of healthy workers. The studies I have cited suffer the same methodological fault but reveal differences large enough to be statistically significant without taking the healthy worker effect into account. Another Boston study is underway, and I understand that preliminary results indicate a significant increase in cancer incidence in fire fighters since World War II. Another reason not to apply the Musk *et al.* study is that building materials in Boston and on the Pacific Coast differ due to differences in climate and in the average age of buildings. This would be responsible for significant differences in the combustion products fire fighters experience. I would expect that California exposures would be more relevant to Oregon experience than those of Massachusetts."