Argued and submitted March 25, reversed and remanded for reconsideration
May 15, 1991

In the Matter of the Compensation of
Lou D. Bales, Claimant.

## SAIF CORPORATION
and Aumsville Rural Fire Dept.,
*Petitioners,*

*v.*

Lou D. BALES,
*Respondent.*

(WCB 88-05665; CA A65158)

810 P2d 1346

Thomas E. Ewing, Assistant Attorney General, Salem, argued the cause for petitioners. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

J. Michael Alexander, Salem, argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Employer seeks review of a Workers' Compensation Board order that set aside its denial of claimant's claim for chronic obstructive pulmonary disease (COPD). We reverse.

Claimant, who has been a fire fighter for more than 20 years, is the fire chief of the Aumsville Fire Department. In March, 1983, he saw Dr. Foster, his family doctor, for a fever, sore throat, cough and congestion. The doctor examined his eyes, ears, nose and throat, listened to his lungs with a stethoscope and took his temperature. The examination revealed that his lungs were clear. Foster's notes regarding that examination state, in part:

> "I think he has a viral [upper respiratory tract] infection which is epidemic in the community. Also states that he hasn't had a physical in 30 years and is concerned about this. I think that at the present time the only thing that needs to be done is a colon cancer screening and he is given hemocults times 3 which he will return to us."

In March, 1987, claimant began complaining to Foster regarding shortness of breath. In October, 1987, the doctor ordered pulmonary function studies, which revealed that claimant had significant obstructive lung disease. Claimant filed a workers' compensation claim. Employer denied the claim; claimant requested a hearing. The referee concluded that claimant's 1983 examination qualified as a "physical examination" under the "fire fighters' presumption"[1] in ORS 656.802(3). On review, the Board agreed.

ORS 656.802(3) provides:

> "Death, disability or impairment of health of fire fighters of any political division who have completed five or more years of employment as fire fighters, caused by any disease of the lungs or respiratory tract, hypertension or cardio-vascular-renal disease, and resulting from their employment as fire fighters is an 'occupational disease.' Any condition or impairment of health arising under this subsection shall be

---

[1] When these proceedings were initiated, the "fire fighters' presumption" was codified in ORS 656.802(1)(b) and (2). Those provisions have been renumbered since as ORS 656.802(3). Or Laws 1987, ch 713, § 4. For convenience, we will refer to ORS 656.802(3).

presumed to result from a fire fighter's employment. *However, any such fire fighter must have taken a physical examination upon becoming a fire fighter, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted employment.* Denial of a claim for any condition or impairment of health arising under this subsection must be on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the fire fighter's employment." (Emphasis supplied.)

Employer argues that ORS 656.802(3) requires a more comprehensive physical examination than was conducted by Foster in 1983.[2] Claimant argues that, because the examination failed to reveal any evidence of COPD, it satisfied the requirements of the statute.

■    We review for substantial evidence and errors of law. ORS 656.298(6). The dispute in this case concerns the Board's interpretation of the statutory term "physical examination." The scope of our inquiry depends on whether "physical examination" is an exact, inexact or delegative statutory term. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980). As used in ORS 656.802(3), it is an inexact term, because it is a complete expression of legislative intention but imports less than a precise meaning. Accordingly, we review to determine whether the Board's interpretation of the term in the context of this case is consistent with the purpose of ORS 656.802(3). 290 Or at 223-28.

■ ■    ORS 656.802(3) creates a presumption of work-relatedness in favor of fire fighters, if they have undergone the required physical examination. An employer can overcome that presumption only by offering clear and convincing evidence to the contrary. *See, e.g., Johnson v. City of Roseburg,* 86 Or App 344, 739 P2d 602 (1982). Our review of the legislative history indicates that the legislature intended as a predicate to the presumption that a physical examination under ORS 656.802(3) must be of the type that would reveal any evidence of "any disease of the lungs or respiratory tract,

---

[2] Employer argues that an upper respiratory tract viral infection is not a "disease of the lungs or respiratory tract," as that phrase is used in ORS 656.802(3). Employer is wrong. *See* ORS 656.802(1)(a).

hypertension or cardiovascular-renal disease" for which a claimant later seeks compensation.[3]

■    We cannot tell from the Board's opinion what interpretation of "physical examination" it applied. The Board said:

"The Referee found that claimant was examined by his treating physician in 1983 and several times subsequently, that claimant's lungs were clear, and that *there was no evidence of COPD.* We agree with the Referee that this examination satisfied that statutory requirement [of ORS 656.802(3)] and that therefore the presumption applies." (Emphasis supplied.)

Whether there was "no evidence" of COPD does not relate to the adequacy of the examination to reveal evidence of the disease.

Reversed and remanded for reconsideration.

---

[3] The legislative history suggests that, when the legislature used the term "physical examination" in ORS 656.802(3), it contemplated that the examination would be at least as "rigid" or "competent" as that required by certain exhibits. One of the bill's sponsors told the Senate Labor and Industries Committee that fire fighters go through a "rigid examination" before entering the service. Minutes, Senate Labor and Industries Committee 2 (Mar. 8, 1961 — statement of Senator Grenfell). Further, the January 24, 1961, minutes of the House Labor and Industries Committee say, in part:

"Rep. Rogers thought that there was some question whether some of the conditions leading to impairment of health of the fire fighter would be determined by a physical examination. Mr. Noble[, secretary of the Oregon State Fire Fighters' Council,] agreed that this was true, but that a *competent examination* on entering into service will show up any heart disease, lung disease, etc." Minutes, House Labor and Industries Committee 1 (Jan. 24, 1961). (Emphasis supplied.)

Also, the exhibits before the Senate Labor and Industries Committee included the Oregon City Civil Service Commission's medical standards for fire fighters and police officers. The Commission's standards provided, in part:

"8. *Chest and Lungs:* (a) Chest Mobility - There must be a chest expansion of at least 2 1/2 inches. Measurements may be made at the ninth rib or at the nipple, or both may be considered together. (b) Respiration - must be full, easy, and regular; the respiratory murmur must be clear and distinct over both lungs, and no disease of the respiratory organs present. Lungs will be X-rayed."