Robert SWANSON, Relator,

v.

CITY OF ST. PAUL, self-insured, Respondent,

and

Healthcare Recoveries, Inc., et al., Respondents.

No. C0–94–1868.

Supreme Court of Minnesota.

Jan. 20, 1995.

Rehearing Denied Feb. 21, 1995.

John J. Horvei, Horvei, Gubbe & Krueger, P.A., Roseville, for relator.

Leonard J. Schweich, Timothy S. Crom, Jardine, Logan & O'Brien, St. Paul, for City of St. Paul.

John Lowry, Healthcare Recoveries, Inc., Louisville, KY, for Healthcare Recoveries.

Lisa Harris, Blue Cross Blue Shield/Medicare, St. Paul, for Blue Cross/Blue Shield/Medicare.

## OPINION

COYNE, Justice.

Certiorari on the relation of the employee to review a decision of the Workers' Compensation Court of Appeals reversing the compensation judge's determination that the employee's coronary artery disease arose out of and in the course of his employment as a firefighter for the City of St. Paul. Concluding the compensation judge's findings pertaining to causation had substantial evidentiary support, we reverse and reinstate the decision of the compensation judge.

Robert E. Swanson has been employed as a firefighter by the City of St. Paul since January 1954. His pre-employment physical examination indicated no cardiovascular disease. In 1989, however, he suffered an onset of unstable angina which ultimately led to heart bypass surgery. Swanson sought workers' compensation benefits, asserting the firefighter's statutory presumption.[1] The employer denied the claim, contending the presumption was rebuttable by evidence of

1. Minn.Stat. § 176.011, subd. 15 (1989).

multiple risk factors unrelated to the employment (hypertension, family history, diabetes, and obesity). Swanson's medical expert, Dr. Markle Karlen, internist at Park Nicollet Medical Center, said that risk factors "are merely statistical signposts which point to an increased statistical possibility of a given person ultimately developing heart trouble." The employer's medical expert, Dr. John Murray, cardiologist at the University of Minnesota, said, however, that Swanson's risk factors put him in a "very high" risk category for heart disease.

The compensation judge decided the statutory presumption had not been rebutted; but the WCCA reversed, concluding the presumption as to medical causation had been overcome by evidence of risk factors, and remanded for reconsideration under the two-part medical/legal causation test of *Egeland v. City of Minneapolis*, 344 N.W.2d 597, 603 (Minn.1984), and *Klapperich v. Agape Halfway House*, 281 N.W.2d 675 (Minn.1979). We affirmed without opinion. *Swanson v. City of St. Paul*, 507 N.W.2d 7 (Minn.1993).

On remand, the matter was submitted on the existing record, including employee's prior hearing testimony describing his 35 years of active firefighting, which he characterized as heavy physical work and emotionally stressful. Employee was also allowed to buttress his evidence as to medical causation with the testimony of Dr. Jesse Edwards, University of Minnesota cardiopathologist, who believed the physical and emotional stress associated with employee's work as a firefighter significantly contributed to the development of his coronary artery disease. The compensation judge again awarded benefits, finding evidence as to legal and medical causation sufficient, and the WCCA again reversed, this time on the ground that legal causation required more than the employee's own testimony. The matter is once again before us upon a writ of certiorari issued to the employee.

To prove legal causation, the employee " 'must produce evidence that the stress was extreme or beyond the ordinary day-to-

day stress to which all employees are exposed,'" *Courtney by Higdem v. City of Orono,* 463 N.W.2d 514, 516–17 (Minn.1990) (quoting *Courtney by Higdem v. City of Orono,* 424 N.W.2d 295, 297 (Minn.1988)), and we have also said that "it was 'important to establish factually the existence of stress in the workplace other than through the disabled employee's own testimony.'" *Id.* at 517 (quoting *Egeland v. City of Minneapolis,* 344 N.W.2d 597, 603 (Minn.1984)). But in *Egeland* we also said the fact that section 176.011, subd. 15 grants special compensation coverage to police officers and firefighters "is an indication that the legislature views police [and firefighting] work as *sui generis,*" quoting *Linnell v. City of St. Louis Park,* 305 N.W.2d 599, 601 (Minn.1981) where we construed the statute " 'to embody the legislature's presumably informed acceptance of the thesis that the occupations of fireman, policeman * * * are likely to *involve greater stress,* whether physical or emotional, or both, than other occupations * * *.'" *Egeland,* 344 N.W.2d at 604 (emphasis in original). The mental-stress claim in *Egeland* involved a disease not named in the statute and was brought under the "personal injury" section to which the statutory presumption of coverage did not attach; nevertheless, we said "the same premise that police work is more stressful than most occupations applies." 344 N.W.2d at 604.

■ Certainly, causation in heart cases is difficult enough to determine by applying medical theory to observable facts, but the difficulty is compounded by the persisting split in medical theory itself on the relation of stress and heart disease. That, however, is not a matter for the courts to consider where the legislature has decided that work common to certain occupations contributes causally to named diseases when the pre-employment physical examination evinces the absence of the disease at that time. Consequently, when there is evidence that a claimant performed the work common to the occupation named in the statute or when the

nature of the work done is undisputed, legal causation is established.

■ As we observed in *Egeland,* stress in the workplace does not incapacitate the majority of workers in occupations named in the statute and, like Egeland, Swanson was "probably constitutionally predisposed" to his heart disease. *Egeland,* 344 N.W.2d at 604. But a predisposition to disease does not disqualify a claimant from the coverage provided by the Workers' Compensation Act:

> The compensation act was designed for the protection of all laborers coming within its purview. That is, it does not apply to those only who are strong in body. Neither is it limited to those only who are normal. Those who are below normal, have a weakness, or carry perchance a disease, are also within its protection. Compensation is not dependent upon any implied assumption of perfect health. It does not exclude the weak or physically unfortunate.

*Id.* (quoting *Walker v. Minnesota Steel Co.,* 167 Minn. 475, 476, 209 N.W. 635 (1926)).

■ In this case, there was no serious dispute that employee experienced physical and emotional stresses common to work as an active firefighter. Minn.Stat. § 176.011, subd. 15(b) (1992), provides that when the pre-employment physical negates "any evidence of myocarditis, coronary sclerosis, pneumonia or its sequel, the disease is presumptively an occupational disease and shall be presumed to have been due to the nature of employment." The employee's testimony, coupled with the statutory presumption that a firefighter's job is stressful, convinces us that the compensation judge properly found evidence of legal causation sufficient. As for medical causation, having reviewed the entire record, we believe the compensation judge's finding that the employment contributed causally to the employee's disability had substantial evidentiary support. *See, e.g., Ruether v. State,* 455 N.W.2d 475 (Minn. 1990); *Moes v. City of St. Paul,* 402 N.W.2d 520 (Minn.1987).[2]

2. The employer contends the compensation judge improperly admitted the employee's medical evidence on remand, but given the purpose of such a proceeding, which is to ascertain the substantial rights of the parties, and in view of the basic aim of the legislation, additional evidence is generally allowed if necessary for making appropriate findings. *E.g., Doble v. Jesco, Inc.,* 514

Reversed and decision of compensation judge reinstated.

Employee is awarded $400 in attorney fees.

N.W.2d 572 (Minn.1994); *Berg v. Sadler,* 235 Minn. 214, 50 N.W.2d 266 (1951).