2000 ND 167

**Delmar ROBERTSON, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,**
**Appellee,**

and

**City of New England, Respondent.**

**No. 20000088.**

Supreme Court of North Dakota.

Sept. 5, 2000.

Kathryn L. Dietz, Dietz, Little & Haas, Bismarck, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, Bismarck, for appellee.

MARING, Justice.

[¶ 1] Delmar Robertson appeals from a judgment affirming a decision by the Workers Compensation Bureau denying him benefits related to a January 1997 heart attack. We hold Robertson was entitled to the presumption that a law enforcement officer's heart disease occurred in the line of duty, and the Bureau failed to rebut the presumption. We reverse and remand with directions to award Robertson benefits.

I

[¶ 2] Robertson filed a claim for benefits with the Bureau following a January 1997 heart attack and bypass surgery. When Robertson had the heart attack, he had been chief of police of the city of New England since August 1993. Robertson also had worked as a law enforcement officer from March 1982 through March 1986 and from December 1986 through February 1993. Robertson did not work as a law enforcement officer for eight months from March 1986 to December 1986 and for five months from February 1993 to August 1993.

[¶ 3] When Robertson had the heart attack in January 1997, N.D.C.C. § 65–01–02(18)(d) (1995), provided a presumption that any condition or impairment of health of a law enforcement officer caused by heart disease was suffered in the line of duty; however, law enforcement officers were not eligible for the presumption unless they had completed five years of continuous service and successfully passed a physical examination which failed to reveal any evidence of the condition.[1]

---

1. The requirement for five years of continuous law enforcement service was enacted in 1995 N.D. Sess. Laws ch. 610, § 1, and provided, in part:

[¶ 4] The Bureau informally rejected Robertson's claim for benefits associated with his heart attack, concluding he was not entitled to the law enforcement presumption because he had not worked as a law enforcement officer for five continuous years at the time of his heart attack and he had not successfully passed a physical examination which failed to reveal any evidence of the condition. After a formal administrative hearing, the Bureau adopted a recommendation by an administrative law judge (ALJ) that Robertson was not entitled to the law enforcement presumption, because he had not completed five years of continuous law enforcement service and he had not successfully passed a physical examination which failed to reveal any evidence of his heart condition. The Bureau adopted the ALJ's recommendation that, without the presumption, Robertson had not established his heart disease was work related.

[¶ 5] On appeal, the district court concluded the 1995 version of the presumption applied, see fn.1, and that nothing in that version of the statute required the five years of continuous law enforcement service be completed at Robertson's last employment. The court decided Robertson had worked continuously as a law enforcement officer for five years from December 1986 through February 1993 and remanded to the Bureau for findings about whether Robertson had successfully passed a physical examination before 1986 and whether the Bureau had rebutted the presumption.

[¶ 6] On remand, the Bureau issued additional findings in which it decided the law enforcement presumption did not apply, because, before 1986, Robertson had not successfully passed a physical examination which failed to reveal any evidence of his heart condition. The Bureau alternatively found the presumption had been rebutted by evidence Robertson's employ-

... any condition or impairment of health of a full-time paid firefighter or law enforcement officer caused by lung or respiratory disease, hypertension, heart disease, or exposure to infectious disease ... is presumed to have been suffered in the line of duty. The condition or impairment of health may not be attributed to any disease existing before that total or partial disability or death unless the contrary is shown by competent evidence.... A full-time paid firefighter or law enforcement officer is not eligible for the benefit provided under this subdivision unless that full-time paid firefighter or law enforcement officer has completed five years of continuous service and has successfully passed a physical examination which fails to reveal any evidence of such a condition. An employer shall require a physical examination upon employment, and annually thereafter, for any employee subject to this subdivision. Results of the examination must be used in rebuttal to a presumption afforded under this subdivision.... The presumption does not include a condition or impairment of health of a full-time paid firefighter or law enforcement officer, who has been employed for ten years or less, if the condition or impairment is diagnosed more than two years after the employment as a full-time paid firefighter or law enforcement officer ends. The presumption also does not in-

clude a condition or impairment of health of a full-time paid firefighter or law enforcement officer, who has been employed more than ten years, if the condition or impairment is diagnosed more than five years after the employment as a full-time paid firefighter or law enforcement officer ends.

When Robertson began work as a law enforcement officer in March 1982, the presumption, codified at N.D.C.C. § 65–01–02(9)(d) (1981), required only two years of continuous law enforcement service:

... any condition or impairment of health of a full-time paid fireman or law enforcement officer caused by lung or respiratory disease, hypertension, or heart disease resulting in total or partial disability or death shall be presumed to have been suffered in the line of duty and shall not be attributed to any disease existing prior to such total or partial disability or death unless the contrary be shown by competent evidence, provided, further, that such full-time paid fireman or law enforcement officer shall have completed two years of continuous service and have successfully passed a physical examination which examination fails to reveal any evidence of such condition.

The law enforcement presumption is currently codified at N.D.C.C. § 65–01–15.1. See 1997 N.D. Sess. Laws ch. 529, § 2.

ment was not a substantial contributing factor to his heart disease. Robertson again appealed to the district court.

[¶ 7] The district court decided Robertson had not exhausted his administrative remedies, because he appealed the Bureau's decision and did not request a second administrative hearing. The court also concluded the Bureau's findings were supported by a preponderance of the evidence, its conclusions were supported by its findings, and its decision was in accordance with the law. Robertson appealed.

## II

[¶ 8] On appeal, we review the Bureau's decision under N.D.C.C. §§ 28–32–19 and 28–32–21. We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or its decision violates the claimant's constitutional rights or deprives the claimant of a fair hearing. *E.g., Vernon v. North Dakota Workers Comp. Bureau,* 1999 ND 153, ¶ 8, 598 N.W.2d 139. Our review of the Bureau's findings of fact is limited to deciding whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal from a decision by the Bureau. *Lee v. North Dakota Workers Comp. Bureau,* 1998 ND 218, ¶ 5, 587 N.W.2d 423.

## III

[¶ 9] Robertson argues, after the district court remanded the case, the Bureau should have referred it back to the ALJ for additional findings of fact and conclusions of law. He argues the Bureau's procedure denied him a fair hearing and due process.

[¶ 10] Although the Bureau may request appointment of an ALJ to hear a case, the ALJ's decision is ordinarily a recommendation. *See Blanchard v. North Dakota Workers Comp. Bureau,* 1997 ND 118, ¶¶ 13–17, 565 N.W.2d 485. The Bureau is ultimately responsible for rendering a decision in workers compensation matters, and although the Bureau could have again referred the matter to the ALJ for additional findings and a recommendation, it was not required to do so.

[¶ 11] On remand, the Bureau's outside litigation counsel submitted proposed additional findings to the Bureau and provided Robertson's counsel with a copy of those proposed findings. After Robertson's counsel responded, the Bureau adopted the proposed additional findings as its findings and decision. In *Scott v. North Dakota Workers Comp. Bureau,* 1998 ND 221, ¶¶ 9–18, 587 N.W.2d 153, we concluded ex parte contacts between the Bureau's outside litigation counsel and the Bureau while the ALJ's recommendation was pending violated N.D.C.C. ch. 28–32. The Bureau's procedure in this case did not violate *Scott,* and we conclude it afforded Robertson reasonable notice and an adequate opportunity to be heard.

## IV

[¶ 12] Robertson argues the district court erred in deciding he failed to exhaust his administrative remedies by not requesting another administrative hearing, and, instead, directly appealing the Bureau's decision on remand.

[¶ 13] Ordinarily, a party must exhaust available administrative remedies before seeking declaratory or injunctive relief. *See Frank v. Traynor,* 1999 ND 183, ¶ 13, 600 N.W.2d 516; *Johnson v. Traynor,* 1998 ND 115, ¶ 12, 579 N.W.2d 184; *Tooley v. Alm,* 515 N.W.2d 137, 140 (N.D.1994). Robertson is not seeking declaratory or injunctive relief. Instead, he is appealing a Bureau order, and the issue is whether the appeal is from a final ap-

pealable order under N.D.C.C. § 65–10–01.

[¶ 14] In *McCarty v. North Dakota Workers Comp. Bureau*, 1998 ND 9, ¶¶ 6–7, 574 N.W.2d 556, the Bureau initially resolved an issue against itself after a formal evidentiary hearing. The Bureau then issued a second order denying benefits on a different theory, but based upon the same evidence introduced at the earlier formal evidentiary hearing. *Id.* We concluded we had jurisdiction to hear an appeal from the second order, because a formal evidentiary hearing had been held on the initial order and the second order was based upon the same evidence introduced in the earlier hearing. *Id.* at ¶ 9. We concluded the Bureau's second order was a formal decision after an evidentiary hearing and was a final appealable order. *Id.* at ¶ 10. *Cf., Freezon v. North Dakota Workers Comp. Bureau*, 1998 ND 23, ¶ 11, 574 N.W.2d 577 (holding Bureau's informal decision without evidentiary hearing was not appealable order); *Lende v. North Dakota Workers' Comp. Bureau*, 1997 ND 178, ¶ 24, 568 N.W.2d 755 (holding party need not file petition for reconsideration before appealing formal decision).

[¶ 15] Here, the Bureau did not rely upon any new evidence in its second order and all its additional findings and conclusions in that decision were based upon evidence introduced at the formal evidentiary hearing. Under these circumstances, we conclude the Bureau's decision is a final appealable order, and the district court erred in deciding Robertson failed to exhaust his administrative remedies.

## V

[¶ 16] Although the district court erred in deciding Robertson failed to exhaust his administrative remedies, the court alternatively affirmed the Bureau's decision on the merits, and we therefore consider whether Robertson was entitled to the presumption that his heart attack was suffered in the line of duty.

## A

[¶ 17] Robertson argues the 1995 version of the statute, which requires five years of continuous law enforcement work and successful completion of a physical examination which fails to reveal any evidence of the condition, does not apply to him, because he began working in law enforcement in 1982 when the applicable law required two years of continuous law enforcement work. *See* fn.1. The Bureau says, in Robertson's first appeal, the district court decided the 1995 version of the statute applied and remanded for further findings on whether Robertson had successfully passed a physical examination before 1986 and whether the Bureau had rebutted the presumption. The Bureau thus argues, because Robertson did not appeal the first district court decision to this Court, the application of the 1995 version of the statute became the law of the case and cannot be challenged in this appeal.

[¶ 18] Generally, the law of the case is defined as " 'the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same.' " *State v. Burckhard*, 1999 ND 64, ¶ 7, 592 N.W.2d 523, *citing, Tom Beuchler Const. v. City of Williston*, 413 N.W.2d 336, 339 (N.D.1987). The law of the case doctrine is grounded on judicial economy to prevent piecemeal and unnecessary appeals. *See Beuchler*, at 338–39. The doctrine encompasses not only issues decided in a first appeal, but also issues which were not presented for review in the first appeal. *Beuchler*, at 339. In another context, however, we have declined to hear appeals where subsequent proceedings could obviate the need for appellate review. *See, e.g., Bulman v. Hulstrand Constr. Co. Inc.*, 503 N.W.2d 240, 241–42 (N.D.1993) (applying N.D.R.Civ.P. 54(b)).

[¶ 19] Here, Robertson has raised this issue throughout this proceeding. *Cf., Siewert v. North Dakota Workers Comp. Bureau,* 2000 ND 33, ¶ 33, 606 N.W.2d 501 (holding question of law not raised in prior appeal would not be examined in subsequent appeal). Robertson prevailed in his first appeal to the district court to the extent the court decided he had five years of continuous law enforcement service from December 1986 to February 1993, and remanded for further findings. A decision favorable to Robertson on remand to the Bureau would have obviated the need for further appellate review, thus satisfying our policy against piecemeal appeals as well as furthering judicial economy. Under these circumstances, we conclude Robertson's failure to appeal the first district court decision does not preclude him from raising this issue in this appeal.

### B

[¶ 20] Robertson argues he is entitled to the presumption under the version of the law in effect before 1995. The Bureau responds the 1995 version of the statute applies, because Robertson's heart attack occurred in 1997 after the requirement for 5 years of continuous law enforcement service was enacted.

[¶ 21] Generally, unless otherwise provided, statutes in effect on the date of an injury govern workers compensation benefits. *Tangen v. North Dakota Workers Comp. Bureau,* 2000 ND 135, ¶ 12, 613 N.W.2d 490; *Wanstrom v. North Dakota Workers Comp. Bureau,* 2000 ND 17, ¶ 7, 604 N.W.2d 860; *Jensen v. North Dakota Workers Comp. Bureau,* 1997 ND 107, ¶ 11, 563 N.W.2d 112; *Thompson v. North Dakota Workers' Comp. Bureau,* 490 N.W.2d 248, 251 (N.D.1992). *See* N.D.C.C. § 1–02–10 (stating no part of code retroactive unless expressly declared).

[¶ 22] When Robertson began working in law enforcement in 1982, the applicable law required law enforcement officers to complete two years of continuous service and successfully pass a physical examination which failed to reveal any evidence of the condition. *See* fn.1. Under the language of that version of the statute, law enforcement officers who had two years of continuous service and had successfully passed a physical examination were entitled to the benefits of the presumption if, and when, they subsequently suffered any condition or impairment of health caused by heart disease. Nothing in the language of either version of the statute precludes application of the presumption once the required time frame was met.[2] Although Robertson did not suffer a heart attack until 1997 and any benefits he may be entitled to would be measured from that date, he had worked continuously in law enforcement from March 1982 through March 1986 and had satisfied the then existing two year requirement for the presumption if, and when, any condition or impairment of health caused by heart disease subsequently manifested itself. Under these circumstances, we conclude Robertson was entitled to the two year requirement for application of the law enforcement presumption in effect before 1995, and we hold March 1982 is the relevant time period for determining whether he successfully passed a physical examination which failed to reveal any evidence of the condition.

### C

[¶ 23] Robertson argues his medical records before 1982 reflect he successfully passed a physical examination which failed to reveal any evidence of a heart condition. The Bureau argues Robertson

**2.** The 1995 version of the statute, *see* fn.1, says the presumption does not include a condition or impairment of health for a law enforcement officer who has been employed less than ten years if the condition is diagnosed more than two years after the employment ends, and for an officer with more than ten years of employment if the condition is diagnosed more than five years after the employment ends. *See* 1995 N.D. Sess. Laws ch. 610, § 1.

was not entitled to the presumption, because he admitted he had not undergone a pre-employment physical examination in connection with any of his jobs in law enforcement.

[¶ 24] The obvious purpose of a pre-employment physical examination is to provide a means of establishing an employee is free of the diseases specified in the statute at the onset of employment. *See Courtney by Higdem v. City of Orono,* 424 N.W.2d 295, 296 (Minn.1988); *Worden v. County of Houston,* 356 N.W.2d 693, 695 (Minn.1984); *Linnell v. City of St. Louis Park,* 305 N.W.2d 599, 601 (Minn.1981); *SAIF Corp. v. Bales,* 107 Or.App. 198, 810 P.2d 1346, 1348 (1991). Robertson testified he was not required to take a pre-employment physical examination for any of his jobs in law enforcement. Although a pre-employment physical examination for the explicit purpose of documenting a law enforcement officer's medical condition would remove any doubt about the officer's condition, the purpose of the examination is satisfied if adequate medical records contemporaneous with the commencement of employment fail to reveal the medical condition. *See Courtney,* at 296; *Worden,* at 695; *Linnell,* at 601. This record includes adequate medical documentation about Robertson's condition before he began working in law enforcement, and we conclude that documentation satisfies the requirement for a pre-employment physical examination.

## D

[¶ 25] Robertson argues his medical records before his employment in law enforcement in 1982 fail to reveal any evidence of heart disease. The Bureau argues Robertson's medical records show evidence of heart-related problems, and he therefore cannot show he successfully passed a physical examination which failed to reveal any evidence of a heart disease.

[¶ 26] The Bureau relies on a February 1980 notation in Robertson's medical records about "labile hypertension"; a January 20, 1981 notation of 142/98 blood pressure, which the Bureau characterizes as "elevated"; and an October 10, 1982 notation that Robertson previously had an incident of elevated blood pressure.

[¶ 27] The Bureau's reliance on those records to show Robertson had not successfully passed a physical examination which failed to reveal any evidence of a heart disease is misplaced. The February 1980 notation about "labile hypertension," when read as a whole, is not a diagnosis; rather, the notation is on Robertson's "request for physical examination" for disability benefits related to his prior military service. In that document, Robertson was required to "list diagnoses or symptoms for which examination is requested," and the document listed "acute gouty arthritis" and "labile hypertension." However, the "report of medical examination" actually diagnosed "hypertension—not found." The January 1981 notation about a blood pressure reading of 142/98 is not, by itself, sufficient to establish Robertson had not successfully passed a physical examination. Robertson's medical records include a March 28, 1980 blood pressure reading of 130/88, a May 30, 1980 reading of 125/75, a November 5, 1980 reading of 124/90, a January 20, 1981 reading of 142/98, an April 13, 1981 reading of 120/82, a June 22, 1981 reading of 140/90, a December 16, 1981 reading of 128/84, and an October 18, 1982 reading of 120/80 with a notation of "one episode of ↑ B.P. No meds." The October 1982 notation was after Robertson had begun working in law enforcement in March 1982. The January 1981 blood pressure reading was during a time when Robertson was being treated for a cyst on his neck. He had the cyst surgically removed in April 1981, and his contemporaneous medical records reveal his "examination was within normal limits[,] EKG was negative[,][c]hest was negative, and all laboratory studies were within normal limits."

[¶ 28] Robertson's fluctuating blood pressure readings before March 1982 are not evidence of heart disease. On this

record, Robertson's medical records before he began working in law enforcement in March 1982 do not reveal evidence of heart disease, and he was entitled to the benefits of the presumption.

## VI

[¶ 29] Robertson argues the Bureau failed to rebut the presumption his heart condition was suffered in the line of duty. The Bureau argues it rebutted the presumption, because the greater weight of the evidence eliminates Robertson's employment as a substantial contributing factor to his heart disease.

[¶ 30] Under North Dakota law, in order to participate in the fund, claimants generally must prove by a preponderance of the evidence they have suffered a compensable injury in the course of employment. *See* N.D.C.C. §§ 65–01–11; *Elter v. North Dakota Workers Comp. Bureau,* 1999 ND 179, ¶ 15, 599 N.W.2d 315. A compensable injury means any injury or disease fairly traceable to employment and generally includes injuries due to heart attack or other heart-related disease precipitated by mental stimulus, which must be causally related to the employer's employment, with reasonable medical certainty, and which must have been precipitated by unusual stress. *See* N.D.C.C. § 65–01–02(11)(a)(3).

[¶ 31] However, under the presumption for law enforcement officers, any condition or impairment of health caused by heart disease is presumed to have been suffered in the line of duty, and the condition may not be attributed to any preexisting disease unless the contrary is shown by competent evidence. *See* fn.1. The presumption shifts the burden of going forward with evidence and the burden of persuasion from the claimant to the Bureau. *See Sunderland v. North Dakota Workmen's Comp. Bureau,* 370 N.W.2d 549, 552 (N.D.1985). The presumption requires the Bureau to prove the nonexistence of the presumed fact is more probable than its existence. *Id.* The Bureau must prove the heart disease was not suffered in the line

of duty, and when multiple factors are involved, the workers' employment need not be the sole cause of the disease and it is sufficient if the work condition is a significant contributing factor to the disease. *See McDaniel v. North Dakota Workers Comp. Bureau,* 1997 ND 154, ¶ 14, 567 N.W.2d 833.

[¶ 32] Here, a report of Robertson's treating physician, Dr. A.M. Booth, stated "Robertson's employment as Chief of Police of New England was a significant contributor to the development and acceleration of his atherosclerotic coronary artery disease, which eventuated in his heart attack on January 1, 1997 and subsequent bypass surgery."

[¶ 33] Dr. Ralph Kilzer reviewed Robertson's medical records and reported Robertson's "heart attack did not result from any work related stressful situation; it resulted from the risk factors" which were identified as high blood pressure, cigarette smoking, family history of coronary heart disease, and male sex. Dr. Kilzer concluded "[s]ooner or later, even without any work stress, [Robertson] would have suffered a heart attack."

[¶ 34] Dr. Robert Oatfield also reviewed Robertson's medical records and reported Robertson was "an adult male in an appropriate age group with a strong family history of ischemic heart disease in both his father and a brother at an early age, as well as an excessive consumption of cigarettes with a 2½ pack per day habit for 40 years, as well as being overweight, having a limited exercise program, hypertension." Dr. Oatfield concluded Robertson "would have developed this problem irrespective of the type of employment that he was engaged in."

[¶ 35] Dr. David Berman examined Robertson and reported he had "several risk factors including a long-standing smoking history, elevated cholesterol, hypertension, and a strongly positive family history," and opined Robertson's "cardiac problem is related to the above risk factors rather than

to stress at work." At the formal hearing, Dr. Berman testified Robertson's work was not a substantial contributing factor in the development of his coronary disease, or in the development of any of the risk factors. Dr. Berman testified Robertson's heart disease would likely have followed the same course, regardless of his employment.

[¶ 36] On cross-examination, Dr. Berman testified he was not certain whether stress was a risk factor for heart attack, but stress could aggravate risk factors like hypertension. He testified stress is a part of life for everybody, and although Robertson may have been under some stress, it was not a major factor in the development of his coronary disease. Dr. Berman also testified stress is not easy to measure and not very well understood, and stress may have had something to do with Robertson's hypertension and elevated cholesterol, but Dr. Berman did not believe stress was an important risk factor. Dr. Berman testified although other experts in the field of cardiology believe stress is a risk factor for the development of coronary heart disease, he did not take that position. Dr. Berman testified Robertson's involvement in a homicide investigation three months before his heart attack was stressful and might even have been "unusual stress as compared to his normal, everyday law enforcement duties."

[¶ 37] The Bureau found the opinions of Dr. Kilzer, Dr. Oatfield, and Dr. Berman compelled a finding that the greater weight of the evidence rebutted the presumption Robertson's heart problems were presumed to be in the line of duty, and the greater weight of the evidence showed Robertson's employment was not a substantial contributing factor to his heart problems.

[¶ 38] Other courts have recognized a split in the medical community about the causal relationship between law enforcement employment and heart disease, and have said the enactment of similar law enforcement presumptions represents a legislatively adopted premise that work stress of a law enforcement officer causes heart disease. *See City and County of San Francisco v. Workers' Comp. Appeals Bd.,* 22 Cal.3d 103, 148 Cal.Rptr. 626, 583 P.2d 151, 155–56 (1978); *Stephens v. Workmen's Comp. Appeals Bd.,* 20 Cal. App.3d 461, 97 Cal.Rptr. 713, 715 (1971); *Swanson v. City of St. Paul,* 526 N.W.2d 366, 368 (Minn.1995); *Linnell,* 305 N.W.2d at 601; *Schave v. Department of State Police,* 58 Mich.App. 178, 227 N.W.2d 278, 282 (1975); *Fairfax County Fire and Rescue Servs. v. Newman,* 222 Va. 535, 281 S.E.2d 897, 900 (1981); *Sperbeck v. Department of Indus., Labor and Human Relations,* 46 Wis.2d 282, 174 N.W.2d 546, 548–49 (1970).

[¶ 39] In *Swanson,* 526 N.W.2d at 368, the Minnesota Supreme Court explained:

> Certainly, causation in heart cases is difficult enough to determine by applying medical theory to observable facts, but the difficulty is compounded by the persisting split in medical theory itself on the relation of stress and heart disease. That, however, is not a matter for the courts to consider where the legislature has decided that work common to certain occupations contributes causally to named diseases when the pre-employment physical examination evinces the absence of the disease at that time. Consequently, when there is evidence that a claimant performed the work common to the occupation named in the statute or when the nature of the work done is undisputed, legal causation is established.
>
> As we observed in *Egeland[v. City of Minneapolis,* 344 N.W.2d 597 (Minn. 1984) ], stress in the workplace does not incapacitate the majority of workers in occupations named in the statute and, like Egeland, Swanson was "probably constitutionally predisposed" to his heart disease. *Egeland,* 344 N.W.2d at 604. But a predisposition to disease does not disqualify a claimant from the

coverage provided by the Workers' Compensation Act:

> The compensation act was designed for the protection of all laborers coming within its purview. That is, it does not apply to those only who are strong in body. Neither is it limited to those only who are normal. Those who are below normal, have a weakness, or carry perchance a disease, are also within its protection. Compensation is not dependent upon any implied assumption of perfect health. It does not exclude the weak or physically unfortunate.

[¶ 40] Under our law enforcement presumption, "[a] worker's employment need not be the sole cause of the disease," and "just because personal habits make a worker more prone to certain injuries does not mean the Bureau can deny a claim when the evidence indicates with reasonable medical certainty that work conditions are causally connected to the particular injury." *McDaniel,* 1997 ND 154, ¶ 12, 567 N.W.2d 833. We agree the Legislature's enactment of the law enforcement presumption represents a legislatively adopted premise that work stress of law enforcement officers affects risk factors and causes heart disease.[3] Other courts have recognized that expert medical opinion rejecting the legislatively adopted premise of the presumption is insufficient to rebut the presumption. *See Stephens,* 97 Cal.Rptr. at 716; *Linnell,* 305 N.W.2d at 601; *Sperbeck,* 174 N.W.2d at 549. We agree the effect of the presumption would be defeated if it could be rebutted by expert medical opinion generally denying the validity of the legislatively enacted premise that work stress causes heart problems. We conclude expert medical opinion that denies the underlying premise of a causal relationship between a law enforcement officer's work stress, including the claimant's predisposition to risk factors, and heart disease is insufficient to rebut the presumption the heart disease was suffered in the line of duty.

[¶ 41] Here, the Bureau's decision was based primarily on Dr. Berman's opinion. Dr. Berman testified he did not believe stress was an important risk factor for heart disease, and his testimony essentially rejected the legislatively adopted premise that a law enforcement officer's work stress causes heart disease. Moreover, two of the risk factors relied upon by Dr. Berman were elevated cholesterol and hypertension. The Bureau initially adopted the ALJ's recommended findings that Robertson's high cholesterol was diagnosed as early as 1988 and his high blood pressure was diagnosed as early as June 1989. Under those findings, medical documentation of those risk factors occurred after Robertson began working in law enforcement in March 1982. Any reliance on a risk factor manifesting itself after Robertson began working in law enforcement is misplaced. Dr. Kilzer and Dr. Oatfield also opined that Robertson would have developed the problem regardless of his employment, and those expert opinions were essentially based on the same premise that risk factors caused the heart condition. We conclude the Bureau's expert medical opinions were legally insufficient to rebut the law enforcement presumption. We hold the Bureau did not meet its burden of rebutting the presumption that Robertson's heart disease was suffered in the line of duty.

3. In North Dakota, a presumption for "municipal full-time paid firemen" was initially enacted in 1957. *See* 1957 N.D. Sess. Laws ch. 390, § 1. In 1971, the presumption was extended to law enforcement officers. *See* 1971 N.D. Sess. Laws ch. 598, § 1. The legislative history regarding the enactment of those provisions is sparse. However, the history regarding the 1995 amendments to the presumption, *see* fn. 1, supports legislative confirmation of the premise that work stress for firefighters and law enforcement officers cause coronary problems. *See Hearing on S.B.2085 Before Senate Industry, Business and Labor Comm.,* 54th N.D. Legis. Sess. (Jan. 18, 1995) (prepared testimony of Peter O'Neill, President Professional Fire Fighters of North Dakota).

## VII

[¶ 42] We reverse and remand with directions to award Robertson appropriate benefits.

[¶ 43] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, GERALD G. GLASER, S.J., concur.

[¶ 44] The Honorable GERALD G. GLASER, S.J., sitting in place of KAPSNER, J., disqualified.