2001 ND 21

**Orlyn WANSTROM, Claimant and Appellant,**

v.

**The NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee,

and

**City of Bismarck, Respondent.**

No. 20000187.

Supreme Court of North Dakota.

Feb. 2, 2001.

Kathryn L. Dietz, Dietz, Little & Haas, Bismarck, ND, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, North Dakota Workers Compensation Bureau, Bismarck, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Orlyn Wanstrom appealed from a district court judgment affirming a North Dakota Workers Compensation Bureau denial of Wanstrom's claim for disability benefits. The Bureau concluded Wanstrom's employment as a firefighter was not a substantial contributing factor in the causation of his lung disease, therefore the N.D.C.C. § 65–01–02(18)(d) presumption his lung condition was suffered in the line of duty was successfully rebutted and Wanstrom did not have a compensable injury. We conclude reasoning minds reasonably could not have determined the presumption was rebutted by the weight of the evidence from the entire record and we reverse and remand.

I

[¶ 2] Wanstrom was a firefighter with the City of Bismarck from May 1, 1974, until June 30, 1997. Wanstrom was exposed to smoke regularly in his work as a firefighter, however, he never required medical treatment for smoke inhalation. Wanstrom smoked cigarettes, approximately one to one-and-a-half packs per day for 30 years. Dr. Monica T. Paulo examined Wanstrom on June 6, 1997. Dr. Paulo diagnosed Wanstrom with chronic obstructive pulmonary disease ("COPD") and stated Wanstrom was at risk for further exposure to smoke or other inhalants. On June 30, 1997, the City of Bismarck placed Wanstrom on medical leave.

[¶ 3] On July 3, 1997, Wanstrom filed a claim with the Bureau seeking application of the presumption in N.D.C.C. § 65–01–02(18)(d) (1995). If applicable, the statute would presume Wanstrom's lung condition was suffered in the line of duty. N.D.C.C. § 65–01–02(18)(d) (1995). The Bureau held because Wanstrom filed his claim after July 1, 1997, he was subject to N.D.C.C. § 65–01–15, a statute enacted by the legislature in 1995 to confine the occupational-lung disease presumption to non-smokers. Therefore, the Bureau concluded Wanstrom was prohibited from using the presumption under N.D.C.C. § 65–01–02(18)(d). Wanstrom appealed and this Court held the Bureau erred as a matter of law by concluding the application date was dispositive instead of the injury date; therefore Wanstrom was entitled to the presumption his lung disease was suffered in the line of duty. *Wanstrom v. North Dakota Workers Comp. Bureau*, 2000 ND 17, ¶ 9, 604 N.W.2d 860. We remanded for additional findings of fact and conclusions of law as to whether the presumption has been successfully rebutted. *Id.*

[¶ 4] On remand, the Bureau looked to the administrative law judge's findings of fact from the previous hearing on October 19, 1998. The Bureau found Wanstrom's employment as a firefighter for 23 years was not a substantial contributing factor in the causation of his lung disease. Therefore, the Bureau concluded the presumption was successfully rebutted and Wanstrom's injury was not compensable. The district court affirmed the Bureau's decision.

II

■ [¶ 5] On appeal from a judgment involving the decision of an administrative agency, we review the decision of the agency and our review is limited to the record before the agency. *Tangen v. North Dakota Workers Comp. Bureau*, 2000 ND 135, ¶ 9, 613 N.W.2d 490. Under

N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or its rules or procedure deprived the claimant of a fair hearing. *Negaard–Cooley v. North Dakota Workers Comp. Bureau*, 2000 ND 122, ¶ 7, 611 N.W.2d 898. We exercise restraint in determining whether the Bureau's findings of fact are supported by a preponderance of the evidence and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Renault v. North Dakota Workers Comp. Bureau*, 1999 ND 187, ¶ 16, 601 N.W.2d 580. On the other hand, questions of law, including the interpretation of a statute, are fully reviewable by this Court. *Wanstrom v. North Dakota Workers Comp. Bureau*, 2000 ND 17, ¶ 5, 604 N.W.2d 860.

### III

[¶ 6] Claimants seeking workers compensation benefits generally must prove by a preponderance of the evidence they have suffered a compensable injury in the course of employment. *Elter v. North Dakota Workers Comp. Bureau*, 1999 ND 179, ¶ 15, 599 N.W.2d 315. A compensable injury includes any disease fairly traceable to the worker's employment. N.D.C.C. § 65–01–02(9)(a)(1) (1995). A disease is fairly traceable to employment if there is a direct causal connection between work conditions and the disease. N.D.C.C. § 65–01–02(18)(a) (1995). A worker's employment need not be the sole cause of the disease, and it is sufficient if a work condition is a substantial contributing factor to the disease. *McDaniel v. North Dakota Workers Comp. Bureau*, 1997 ND 154, ¶ 12, 567 N.W.2d 833.

[¶ 7] In claims involving firefighters, however, a condition or impairment of health caused by lung or respiratory disease is presumed to have been suffered in the line of duty. N.D.C.C. § 65–01–02(18)(d) (1995). The presumption shifts the burden of going forward with evidence and the burden of persuasion from the claimant to the Bureau. *Sunderland v. North Dakota Workmen's Comp. Bureau*, 370 N.W.2d 549, 552 (N.D. 1985). Therefore, under the North Dakota view of presumptions, the Bureau is required to prove the nonexistence of the presumed fact is more probable than its existence. *Id.* In this case, the presumed fact is Wanstrom's work as a firefighter was a substantial contributing factor in the development of his lung disease. As we explained in *Flermoen v. North Dakota Workers Comp. Bureau*, 470 N.W.2d 220, 222 (N.D.1991), the presumption's purpose is to relieve firefighters of the nearly impossible burden of proving firefighting actually caused their disease. Under the firefighter presumption, "[a] worker's employment need not be the sole cause of the disease," and "just because personal habits make a worker more prone to certain injuries does not mean the Bureau can deny a claim when the evidence indicates with reasonable medical certainty that work conditions are causally connected to the particular injury." *McDaniel*, 1997 ND 154, ¶ 12, 567 N.W.2d 833 (noting McDaniel smoked between one-half and two packs of cigarettes per day for over thirty years). Therefore, it is not sufficient for the Bureau to show smoking was the more likely cause of Wanstrom's lung disease, instead the Bureau must prove Wanstrom's exposure to smoke on the job was not a substantial contributing factor to his disease.

[¶ 8] On remand, the Bureau found the greater weight of the evidence indicates Wanstrom's employment was not a substantial contributing factor in the development of his COPD. The Bureau based this finding on testimony of two medical

experts, as summarized in paragraph two of the findings of fact.

The Bureau finds a great deal of consistency between the opinions of Drs. Paulo and Mulro[o]ney. Both doctors made a strong causal connection between the Claimant's smoking and his COPD. Neither doctor could point to an established causal connection between firefighting and COPD. Both doctors found it significant that the Claimant had never been treated for smoke inhalation. Both doctors recognized smoking as the predominant risk factor for COPD. In conclusion, the testimony of both doctors, taken as a whole, eliminates the Claimant's work as a firefighter as a substantial contributing factor in the causation of his COPD. In addition, the testimony of both doctors resolves any arguable conflicts arising from Dr. Paulo's description of Claimant's COPD as being "multifactorial."

[¶ 9] Both physicians testified smoking is a major cause of COPD and both also agreed it was significant that Wanstrom had never required medical treatment following smoke inhalation at a fire. However, the record does not support the Bureau's finding that, taken as a whole, the testimony of both doctors eliminates Wanstrom's work as a firefighter as a substantial contributing factor in the causation of his COPD or resolves conflicts arising from Dr. Paulo's description of Wanstrom's COPD as multifactorial. The Bureau failed to address the agreement of both experts that COPD can be multifactorial and usually COPD develops later than at the young age of 44, even among smokers. Dr. Paulo stated it was unusual, even for a smoker, to develop COPD at age 44 without some other predisposing factor. In fact, both experts testified inhalation of smoke or toxic fumes could be a contributing factor to chronic lung disease. Also, the Bureau did not address the fact Wanstrom was regularly exposed to smoke as is normal for firefighters, as testified by a co-worker, Mr. Thomas Biwer:

Q. [Wanstrom's attorney] I'll try to come back to the question I asked. It was regarding the degree of exposure to smoke during those years, and I was trying—if it was possible, I was trying to define more specifically what "not unusual" meant in terms of quantifying it. And I'm not asking you for specific fires.
A. [Mr. Biwer] Perhaps his—his rate of exposure would have been the same as anyone else, any other member of the fire department.
Q. Which would be what?
A. It's part of the job. It's something that happens when you go to fires.
Q. So it happens—
A. It happens regularly.

Additionally, protective masks were not commonly used until the early 1990s and Wanstrom began his work as a firefighter in 1974. The list of fires attended by Wanstrom included both outdoor and indoor fires, involving a variety of substances.

[¶ 10] Although Dr. Thomas F. Mulrooney testified Wanstrom's occupational smoke exposure was not a substantial contributing factor in the development of his lung disease, Dr. Paulo, Wanstrom's treating physician, could not rule out occupational smoke exposure as a substantial contributing factor to Wanstrom's lung disease. In fact, she said she could not delineate what role the smoke exposure had in the development of Wanstrom's disease.

[¶ 11] Taken as a whole, the weight of the evidence does not support the Bureau's finding firefighting was eliminated as a substantial contributing factor to Wanstrom's lung disease.

[¶ 12] The presumption, enacted to relieve claimants from the nearly impossible burden of proving firefighting actually caused their disease, may appear to create a nearly impossible burden for the Bureau to prove the negative, that is, to prove the nonexistence of a substantial contributing

factor to the causation of a disease. However, it has not been an impossible burden. In *Burrows v. North Dakota Workers' Comp. Bureau*, 510 N.W.2d 617 (N.D. 1994), the Bureau successfully rebutted the presumption for law enforcement officers. Burrows was a police officer for 31 years, had a 40–year history of smoking, and developed lung cancer. *Id.* at 617. Based on the medical opinions of two experts, including the treating physician, this Court held a reasoning mind could have reasonably determined Burrow's lung cancer was caused by his smoking and not by his occupation. *Id.* at 619. In contrast to Wanstrom, Burrows was not exposed to smoke, in fact, there was no evidence of exposure to cancer-causing agents on the job and there was no evidence showing a risk of lung cancer from police work. *Id.*

[¶ 13] The presumption was also successfully rebutted in *Elter v. North Dakota Workers Comp. Bureau*, 1999 ND 179, ¶ 2, 599 N.W.2d 315 a case of a police officer who had smoked one to one-and-a-half packs of cigarettes per day for approximately 30 years and developed lung cancer. Elter had not smoked for the last 15 years and claimed the cancer may have been caused by his exposure to asbestos and radon during his employment as a highway patrol officer. *Id.* at ¶¶ 2, 4. However, because no credible evidence established the levels of radon in the courthouse or how frequently Elter worked in the courthouse, and none of the experts could determine whether Elter's carcinogen exposure in the work place increased the relative risk in developing cancer, the presumption his occupation was a substantial contributing factor to his lung cancer was successfully rebutted. *Id.* at ¶¶ 19–21.

[¶ 14] In *Sunderland v. North Dakota Workmen's Comp. Bureau*, 370 N.W.2d 549, 554 (N.D.1985), the Bureau failed to rebut the presumption Sunderland's 36 years as a police officer substantially contributed to the development of his lung cancer. Sunderland had smoked one pack of cigarettes per day for 40 years. *Id.* at 553. The Bureau relied on the physician's statement "his occupation in no way, *as far as we know*, contributed to this difficult illness." *Id.* [Emphasis added in *Sunderland* ]. This Court held the weight of the evidence did not support this finding, additionally, the Bureau erred as a matter of law in concluding it was Sunderland's burden to establish the link between his cancer and occupation, defeating the purpose of the presumption. *Id.* at 553–54.

[¶ 15] Recently, however, we further clarified the strength of the presumption when we held the presumption was not successfully rebutted by expert opinion that merely denied the premise that served as the basis for the legislative enactment of the presumption. *Robertson v. North Dakota Workers Comp. Bureau*, 2000 ND 167, ¶ 1, 616 N.W.2d 844. Robertson was a police officer who developed heart disease. *Id.* at ¶ 2. Robertson was entitled to the presumption his heart disease occurred in the line of duty. *Id.* at ¶ 28. The Bureau argued this presumption was rebutted by expert testimony which purported stress of work was not a risk factor for heart disease. *Id.* at ¶ 36–37. We held expert medical opinion rejecting the legislatively adopted premise of the presumption is insufficient to rebut the presumption. *Id.* at ¶ 40. In *Robertson*, we quoted the explanation given by the Minnesota Supreme Court in *Swanson v. City of St. Paul*, 526 N.W.2d 366, 368 (Minn.1995):

Certainly, causation in heart cases is difficult enough to determine by applying medical theory to observable facts, but the difficulty is compounded by the persisting split in medical theory itself on the relation of stress and heart disease. That, however, is not a matter for the courts to consider where the legislature has decided that work common to certain occupations contributes causally to named diseases when the pre-employment physical examination evinces the absence of the disease at that time. Consequently, when there is evidence that a claimant performed the work common to the occupation named in the statute or when the nature of the work

done is undisputed, legal causation is established.

[¶ 16] Analogous to the presumption for law enforcement officers in *Robertson*, we agree the legislature's enactment of the firefighter presumption represents a legislatively adopted premise that smoke exposure of firefighters causes lung disease. In *Robertson*, the Bureau concluded expert testimony, that denied that the work stress of law enforcement affects risk factors and causes heart disease, successfully rebutted the presumption. *Id.* at ¶ 37. We disagreed, holding the effect of the presumption would be defeated if it could be rebutted by expert medical opinion generally denying the validity of the legislatively enacted premise that work stress causes heart problems. *Id.* at ¶ 40. We therefore concluded expert medical opinion that denies the underlying premise of a causal relationship between a law enforcement officer's work stress, including the claimant's predisposition to risk factors, and heart disease is insufficient to rebut the presumption the heart disease was suffered in the line of duty. *Id.*

[¶ 17] The Bureau relied on Dr. Mulrooney's testimony in this case to rebut the presumption. Dr. Mulrooney testified smoke inhalation on the job was not a substantial contributing factor to Wanstrom's lung disease. This opinion was based on the lack of any severe exposure to smoke or toxic fumes which required medical care. Also, Dr. Mulrooney testified the fires Wanstrom was exposed to in his 23 years of firefighting were primarily outdoors and did not contain toxic substances which could have contributed to his developing lung disease.

[¶ 18] Dr. Mulrooney agreed COPD could be multifactorial and usually developed later than the age of 44, even among smokers. Despite evidence of smoke exposure on the job, Dr. Mulrooney testified Wanstrom's job as a firefighter was not a substantial contributing factor to his lung disease. Therefore, Dr. Mulrooney, by deciding regular smoke exposure of a fire-

fighter was not a substantial contributing factor to that firefighter's lung disease, was denying the underlying premise that served as the basis for the legislative enactment of the firefighter presumption in N.D.C.C. § 65–01–02(18)(d). Dr. Mulrooney interpreted the premise to require severe exposure in order to establish a causative link as a substantial contributing factor, in contrast to the legislative premise that regular smoke exposure of firefighters causes lung disease. Reliance on this denial of the legislative premise is illustrated by the statement in the Bureau's finding of fact, "[n]either doctor could point to an established causal connection between firefighting and COPD." Similar to the denial of work stress as a causative factor for heart disease in *Robertson*, Dr. Mulrooney's rejection of regular smoke exposure as a substantial causative factor for lung disease is insufficient to rebut the presumption that Wanstrom's lung disease was suffered in the line of duty. *See Robertson*, 2000 ND 167, ¶ 40, 616 N.W.2d 844.

[¶ 19] We conclude the expert medical opinions were legally insufficient to rebut the firefighter presumption. We hold the Bureau did not meet its burden of rebutting the presumption Wanstrom's lung disease was suffered in the line of duty.

[¶ 20] We reverse the judgment and remand the matter to the district court for entry of a judgment reversing the Bureau's order and remanding the matter for the Bureau to award Wanstrom appropriate benefits.

[¶ 21] WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., WILLIAM W. McLEES, JOHN E. GREENWOOD, D.JJ., concur.

[¶ 22] WILLIAM W. McLEES, D.J., and JOHN E. GREENWOOD, D.J., sitting in place of KAPSNER, J., and SANDSTROM, J., disqualified.