2002 ND 96

**Ronald PAUL, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.**

No. 20010290.

Supreme Court of North Dakota.

June 4, 2002.

Steven L. Latham, Wheeler Wolf, Bismarck, ND, for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Bismarck, ND, for appellee.

SANDSTROM, Justice.

[¶ 1] Ronald Paul appealed from a judgment affirming a North Dakota Workers Compensation Bureau decision approving a vocational rehabilitation plan and denying him further disability and vocational rehabilitation benefits. We hold the Bureau erroneously applied a presumption to Paul and placed the burden of proof on him. We reverse and remand for proceedings consistent with this opinion.

I

[¶ 2] In August 1985, Paul sustained a low-back injury during the course of his employment as a construction laborer. The Bureau accepted liability and paid disability benefits and medical expenses. Paul has not worked since his 1985 injury, and he underwent back surgery in 1986 and in 1993. After several unsuccessful attempts at rehabilitation, the Bureau referred Paul to Dr. Peterson for an independent medical examination in 1998. Dr. Peterson's independent medical examination stated Paul was capable of returning to gainful employment with some lifting restrictions. Paul had moved to Phoenix, Arizona, and his treating physician there, Dr. Shapiro, agreed with the findings in Dr. Peterson's independent medical examination. Paul underwent a functional capacity evaluation, which indicated Paul's lifting capabilities were 17.5 pounds "rarely" and 12.5 pounds "occasionally." The results of Paul's functional capacity evaluation indicated he qualified for "sedentary" and "light" categories of work as defined by the United States Department of Labor's Dictionary of Occupational Titles. The functional capacity evaluation defined sedentary work "as exerting up to 10 lbs. of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise moving objects including the human body," and light work as "exerting up to 20 lbs. of force occasionally, and/or up to 10 lbs. of force frequently, and/or a negligible

amount of force constantly to move objects." Dr. Shapiro agreed with the results of Paul's functional capacity evaluation and released him to work under those restrictions.

[¶ 3] Under N.D.C.C. § 65–05.1–01, the Bureau's vocational rehabilitation consultant ultimately developed a rehabilitation plan for Paul to return to work in the Phoenix area. The rehabilitation consultant concluded there were sufficient job opportunities in the Phoenix area as a sales attendant, service establishment counter attendant, or automobile rental clerk, and those job opportunities satisfied his physical restrictions and the requirements of N.D.C.C. § 65 05.1–01. The Bureau accepted the rehabilitation consultant's plan and issued an order denying Paul further disability and vocational rehabilitation benefits.

[¶ 4] Paul requested and received a formal rehearing before an administrative law judge ("ALJ"). The ALJ said the job descriptions for sales attendant, service establishment counter attendant, and automobile rental clerk required a person to lift up to 20 pounds, which exceeded Paul's lifting abilities, but those three job descriptions did not describe lifting as a principal or significant activity. The ALJ stated, because of the number of openings for those jobs in the Phoenix area and because the descriptions did not describe lifting as a principal or significant activity, it was presumed there were employment opportunities for him in the Phoenix area and the burden was on him to show there were not. The ALJ said, in rapidly growing cities like Phoenix, it has become routine for employers to accommodate physically impaired employees and, in any event, the probability of finding a job in the Phoenix area within Paul's physical restrictions was favorable. The ALJ said Paul did not attempt a good faith work search or work

trial in the Phoenix area with respect to any of the occupations identified in his vocational plan, and he did not show there were no employment opportunities for him within his lifting restrictions; nor did he show the vocational plan would not otherwise return him to substantial gainful employment. The ALJ recommended the following finding of fact:

"[t]he greater weight of the evidence received at Mr. Paul's hearing shows, then, that the three occupations identified for him in the vocational plan, sales attendant, service establishment counter attendant, and automobile rental clerk, are entry-level positions with no specialized educational background, skills, or experience that Mr. Paul does not possess; that they meet the wage test; that there are ample opportunities for employment in those occupations in the Phoenix, Arizona vicinity where he resides; that both the doctor who performed the IME and his treating doctor were of the opinion that he could return to work and that those three occupations were appropriate for him; and that there is a reasonable likelihood that, given the number of annual job openings, he will find work that is within his capacity to perform."

The ALJ said Paul had not shown a good faith work trial or job search and had not shown that his injury significantly impacts his ability to compete for employment under N.D.C.C. § 65-05.1-04(6):

"[o]ther than some vague testimony that he had called a local business, detailed his back pain and lifting limitations, and then asked about his job opportunities under such circumstances, Mr. Paul offered no evidence of substance showing that he has, as yet, performed a good faith work trial or work search. Consequently, he did not meet that burden of proof, and because he has not undertaken such a work trial or work search, he is also not in a position to assert that 'the injury significantly impacts the employee's ability to successfully compete for gainful employment in that the injury leads employers to favor those without limitations over the employee.'"

The ALJ recommended finding the Bureau's vocational plan met the goal of providing Paul with a reasonable opportunity of obtaining substantial gainful employment. The Bureau adopted the ALJ's recommendation, and the district court affirmed the Bureau's decision denying Paul further disability and vocational rehabilitation benefits.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06, 65-10-01, and 28-32-15, which, effective August 1, 2001, is codified at 28-32-42. Paul's November 26, 2001, appeal to this Court is timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28-32-49, which was codified at N.D.C.C. § 28-32-21 before August 1, 2001. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-32-49.

## II

[¶ 6] On appeal, we review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Snyder v. North Dakota Workers Comp. Bureau*, 2001 ND 38, ¶ 7, 622 N.W.2d 712. Under N.D.C.C. §§ 28-32-19 and 28-32-21, which, effective August 1, 2001, are codified at 28-32-46 and 28-32-49, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or its rules or procedure deprived the claimant of a fair hearing. *Negaard–Cooley v. North*

*Dakota Workers Comp. Bureau*, 2000 ND 122, ¶ 7, 611 N.W.2d 898. We exercise restraint in deciding whether the Bureau's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the Bureau; rather, we decide whether a reasoning mind reasonably could have decided the Bureau's findings were proven by the weight of the evidence from the entire record. *Renault v. North Dakota Workers Comp. Bureau*, 1999 ND 187, ¶ 16, 601 N.W.2d 580. Questions of law, including the interpretation of a statute, are fully reviewable on appeal from a Bureau decision. *Lawrence v. North Dakota Workers Comp. Bureau*, 2000 ND 60, ¶ 11, 608 N.W.2d 254.

### III

[¶ 7] Paul argues the Bureau's adoption of the ALJ's recommendation was not in accordance with the law because the ALJ placed the burden of proof on him. He argues the Bureau has the burden of establishing that the vocational plan provided him with a reasonable opportunity to obtain substantial gainful employment, and it is clear the ALJ placed the burden of proof on him to prove the plan does not meet the requirements of N.D.C.C. § 65–05.1–01. Paul argues the ALJ's recommended findings demonstrate the ALJ improperly placed the burden of proof on him to prove the vocational plan did not provide him with a reasonable opportunity for employment.

[¶ 8] The parties agree the Bureau has the burden of establishing that a rehabilitation plan is appropriate. Under N.D.C.C. § 65–05.1–01(3), the goal of vocational rehabilitation is to return a disabled employee to substantial gainful employment, which means bona fide work for remuneration that is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferrable skills, and which meets a wage test. A rehabilitation plan is appropriate if it satisfies the requirements of N.D.C.C. ch. 65–05.1 and gives a claimant a reasonable opportunity to obtain employment. *See Lucier v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 56, 59 (N.D.1996). A rehabilitation plan, however, need not guarantee a claimant a job, or a predetermined weekly wage. *Id.; Held v. North Dakota Workers Comp. Bureau*, 540 N.W.2d 166, 169–70 (N.D.1995). In *Svedberg v. North Dakota Workers Comp. Bureau*, 1999 ND 181, ¶ 17, 599 N.W.2d 323, we said the intent of N.D.C.C. ch. 65–05.1 is to rehabilitate an injured worker to return to substantial gainful employment, and the Legislature meant actual rehabilitation, with a realistic opportunity to return to work, not a theoretical rehabilitation on paper only.

[¶ 9] Here, the Bureau adopted the ALJ's recommendation that the three jobs identified in the Bureau's vocational plan—sales attendant, service establishment counter attendant, and automobile rental clerk—were suitable for Paul's education, experience, and marketable skills, those occupations met the required wage test, and there was a viable market for those positions in the Phoenix area. The critical question is whether those jobs satisfied Paul's physical limitations for lifting.

[¶ 10] The ALJ said the descriptions for the three jobs identified strength demands as "Light–Lift up to 20 pounds," which exceeded Paul's maximum material handling and lifting abilities of 17.5 pounds rarely and 12.5 pounds occasionally. The ALJ said, however, the job descriptions for those three jobs did not specify lifting as a principal or significant activity and did not address the likelihood a particular job would, or would not, entail lifting that exceeded Paul's limitations. The ALJ then said, because of the forecast for the number of jobs in the Phoenix area and be-

cause the descriptions for those three jobs did not specify lifting as a principal or significant activity, "it is presumed that there are employment opportunities for Mr. Paul within those occupations in the Phoenix, Arizona vicinity that do not involve lifting in excess of his FCE lifting maximums, and the burden is upon him to show that there are not."

[¶ 11] The ALJ's statement about a presumption is not in accordance with the requirement that the Bureau establish a rehabilitation plan with a reasonable opportunity for a claimant to obtain employment. The Bureau has cited no legal authority for the creation of a presumption, or the shifting of the burden of proof to Paul. *Cf. Wanstrom v. North Dakota Workers Comp. Bureau*, 2001 ND 21, ¶ 7, 621 N.W.2d 864 (statutory presumption that firefighter's lung disease suffered in line of duty); *Robertson v. North Dakota Workers Comp. Bureau*, 2000 ND 167, ¶ 31, 616 N.W.2d 844 (statutory presumption that law enforcement officer's heart attack suffered in line of duty); *Shiek v. North Dakota Workers Comp. Bureau*, 1998 ND 139, ¶ 11, 582 N.W.2d 639 (statutory retirement presumption). The ALJ erroneously relied on a presumption there were sufficient job opportunities in the Phoenix area within Paul's physical limitations, and erroneously shifted the burden of proof to Paul to show there were not job opportunities. The presumption and burden shifting are not in accordance with the law and adversely impacted the Bureau's ultimate findings about the rehabilitation plan. The Bureau's decision must be based on evidence presented at the hearing which establishes a rehabilitation plan that provides Paul with a reasonable opportunity for employment within his restrictions and without the aid of a presumption or shifting the burden of proof to Paul. We conclude the Bureau's ultimate decision was affected by its erroneous reliance on the presumption that there were

employment opportunities for Paul in the Phoenix area, and the shifting of the burden of proof to him to show there were not employment opportunities.

## IV

[¶ 12] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶ 13] WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring.

[¶ 14] The rehabilitation consultant assigned to Ronald Paul testified she had contacted a big employer in the Phoenix area and was told employers in that area routinely accommodate physically impaired applicants for entry level positions. The ALJ, recognizing the size of the Phoenix area, "presumed" there were a large number of employers in the Phoenix area, although that well-known fact is not in the record. A reasonable person could conclude that if there are a large number of employers in the area and that if employers routinely accommodate physically impaired applicants for entry level position, Paul had a reasonable likelihood he would be able to locate a job accommodating his lifting restrictions under the Bureau's plan.

[¶ 15] The problem identified by the majority opinion is the "presumption" there be a large number of jobs available in a heavily populated area. If there are a large number of jobs in a populous area, there is evidence in that record that the employers filling those jobs routinely make accommodations for physically impaired applicants for entry level positions. In that instance, the conclusion that Paul has a reasonable likelihood of finding a job that will accommodate his lifting restric-

tions hardly seems unwarranted, unfair or an impermissible shifting of a burden to go forward.

[¶ 16] I have reservations that the "presumption" used by the ALJ was unwarranted in this instance. Nevertheless, despite my fear this opinion will be read to require proof of the obvious to an inordinate point, I concur, although reluctantly, in the decision of the majority to remand for further evidence. Insofar as the result of the majority is a signal to ALJ's and the Bureau that unwarranted presumptions of fact are unacceptable, I agree with the majority opinion. I suggest ALJ's and the Bureau, as well as other administrative agencies, avoid the use of that term except where specifically authorized by law in order to avoid what may become a predictable response from this Court.

[¶ 16] Gerald W. Vande Walle, C.J.