2003 ND 63

Anna Marie **BACHMEIER, Personal Representative of the Estate of Randy Bachmeier, Deceased, Claimant and Appellant**

v.

The **NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee**

and

**Nordic Fiberglass, Respondent.**

No. 20020270.

Supreme Court of North Dakota.

April 17, 2003.

Kathryn L. Dietz, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Jacqueline S. Anderson, Special Assistant Attorney General, Nilles, Hansen & Davies Ltd., Fargo, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1] Anna Bachmeier, as personal representative of the estate of Randy Bachmeier, appealed from a judgment affirming an order of the Workers Compensation Bureau denying Randy Bachmeier's reapplication for disability benefits. We affirm, concluding the Bureau correctly interpreted the law and did not err in determining Randy Bachmeier had failed to show an actual wage loss caused by a significant change in his compensable medical condition.

I

[¶ 2] In January 1994, Randy Bachmeier sustained a work-related back injury while employed by Nordic Fiberglass, Inc. Bachmeier applied for Workers Compensation benefits, and the Bureau accepted the claim and paid medical and disability benefits. Bachmeier returned to work at Nordic Fiberglass part time in November 1994, and the Bureau paid partial disability benefits until December 24, 1994.

[¶ 3] In July 1995, Bachmeier had surgery for a herniated disc at L4–L5. Bachmeier reapplied for benefits and received temporary total disability benefits until October 1995, when he returned to work part time at Nordic Fiberglass. Bachmeier received vocational rehabilitation assistance, and a modified position was provided at Nordic Fiberglass. In March 1996, Bachmeier's treating physician released him to return to work full time in

the modified position at Nordic Fiberglass. Bachmeier claimed he had continuing back pain and could not perform the modified job full time. On several occasions during March and April 1996, Bachmeier was absent from work because of his back pain.

[¶ 4] On May 21, 1996, the Bureau denied further disability benefits, on the basis of Bachmeier's return to full-time employment. Two days later, on May 23, 1996, Nordic Fiberglass fired Bachmeier for his absenteeism. Bachmeier did not seek other employment after his termination by Nordic Fiberglass. Bachmeier initially attempted to appeal the Bureau's May 21, 1996, order denying further disability benefits, but voluntarily withdrew his appeal.

[¶ 5] Bachmeier reapplied for disability benefits in July 2000, alleging new medical evidence showed his 1995 surgery had not fully corrected his back problems and he had been disabled and unable to work at all times after his May 1996 termination by Nordic Fiberglass. Bachmeier alleged an MRI performed in April 2000 showed a herniated disc at L5–S1, and presented evidence from physicians that a "bulge" at that spot in 1994 had progressed to the eventual herniation.

[¶ 6] The Bureau denied Bachmeier's reapplication, concluding Bachmeier had failed to show a significant change in his compensable medical condition and had failed to show an actual wage loss caused by such a change. Bachmeier filed a request for a hearing before an administrative law judge ("ALJ"). Following the hearing, but before the ALJ issued his decision, Bachmeier died of causes unrelated to the work injury. Anna Bachmeier was appointed personal representative of Randy Bachmeier's estate and was substituted as a party.

[¶ 7] The ALJ issued his recommended findings of fact, conclusions of law, and order, finding Randy Bachmeier had sustained a significant change in his compensable medical condition but had failed to show an actual wage loss. The Bureau adopted the ALJ's recommended findings, conclusions, and order denying the reapplication for benefits. Anna Bachmeier appealed to the district court, which affirmed the order of the Bureau.

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 65–10–01, and 28–32–42. Anna Bachmeier's appeal to this Court was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 9] Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal from the district court ruling on an administrative decision, this Court reviews the agency order in the same manner. N.D.C.C. § 28–32–49; *Morris v. Job Service North Dakota,* 2003 ND 45, ¶ 5, 658 N.W.2d 345; *Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Comp. Bureau,* 2002 ND 204, ¶ 8, 654 N.W.2d 426.

[¶ 10] We review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Paul v. North Dakota Workers Comp. Bureau,* 2002 ND 96, ¶ 6, 644 N.W.2d 884. We exercise restraint in deciding whether the agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Id.* We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Morris,* 2003 ND 45, ¶ 5, 658 N.W.2d 345; *Grand Forks Prof'l Baseball,* 2002 ND 204, ¶ 8, 654 N.W.2d 426.

III

[¶ 11] A claimant seeking benefits from the workers compensation fund has the burden of proving by a preponderance of the evidence that he is entitled to benefits. N.D.C.C. § 65–01–11; *Gronfur v. North Dakota Workers Comp. Fund,* 2003 ND 42, ¶ 6, 658 N.W.2d 337; *Rush v. North Dakota Workers Comp. Bureau,*

2002 ND 129, ¶ 6, 649 N.W.2d 207. When a claimant's disability benefits have been discontinued and the claimant sustains a significant change in medical condition that causes further wage loss, the claimant may file a reapplication seeking further disability benefits. *Gronfur,* at ¶ 6. Reapplication for disability benefits is governed by N.D.C.C. § 65–05–08(1):

When disability benefits are discontinued, the bureau may not begin payment again unless the injured employee files a reapplication for disability benefits on a form supplied by the bureau. In case of reapplication, the award may commence no more than thirty days before the date of reapplication. Disability benefits must be reinstated upon proof by the injured employee that:

a. The employee has sustained a significant change in the compensable medical condition;

b. The employee has sustained an actual wage loss caused by the significant change in the compensable medical condition; and

c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

[¶ 12] The Bureau found Randy Bachmeier failed to show he had sustained an actual wage loss caused by a significant change in his compensable medical condition. Anna Bachmeier concedes Randy Bachmeier never sought any further employment after he was fired by Nordic Fiberglass for absenteeism in May 1996, two days after the Bureau issued its order finding him able to work full time. Anna Bachmeier alleges she has shown an actual wage loss through medical evidence demonstrating Randy Bachmeier was disabled and unable to work at all times after his termination, resulting in a loss of earning capacity. Anna Bachmeier contends a showing of loss of earning capacity satis-

fies the actual wage loss requirement of N.D.C.C. § 65–05–08(1).

[¶ 13] A majority of this Court rejected an identical argument in *Gronfur*. Gronfur had sustained a back injury and received temporary total disability benefits. Upon finding Gronfur was capable of performing light-duty work, the Bureau discontinued total disability benefits and awarded partial disability benefits. When his back subsequently worsened, Gronfur reapplied for total disability benefits. At the time of his reapplication, Gronfur was unemployed and had made no attempt to find employment following his initial injury. Gronfur argued his demonstrated loss of earning capacity satisfied the requirements of N.D.C.C. § 65–05–08(1). This Court rejected Gronfur's argument, concluding loss of earning capacity and actual wage loss are distinct concepts, and a claimant who was unemployed and had not sought employment before or after the change in medical condition had not incurred an actual wage loss:

> To begin payment of previously discontinued disability benefits a claimant must prove under N.D.C.C. § 65–05–08(1)(b) that the claimant has sustained "an actual wage loss caused by the significant change in the compensable medical condition." We conclude this provision is clear and unambiguous.
>
> Although the legislature has not defined the term "actual wage loss," the term wages is defined under N.D.C.C. § 65–01–02(31):
>
>> "Wages" means an employee's remuneration from all employment reportable to the internal revenue service as earned income for federal income tax purposes.
>
> Using that definition of wages in the context of "actual wage loss" under N.D.C.C. § 65–05–08(1)(b), the claimant must prove that he has sustained an actual loss of remuneration from employment which would be reportable to the internal revenue service as earned income for federal income tax purposes. The requirement is clear. To demonstrate an actual loss of wages or remuneration as a result of a change in the claimant's compensable medical condition, the claimant must necessarily first demonstrate that he was earning wages from employment when the change in his medical condition occurred and must then show that the change caused at least a partial loss of those wages.
>
> Gronfur's attempt to equate actual wages with earning capacity is misplaced. The distinction between those terms is clearly recognized in workers compensation law....
>
> We conclude the Bureau interpreted and applied N.D.C.C. § 65–05–08(1) in accordance with the law. Gronfur, by choosing not to seek employment and by not earning employment wages when he sustained a change in his compensable medical condition, failed to incur an actual wage loss as a result of the change in his medical condition. Gronfur was unable, therefore, to prove the actual wage loss which is a prerequisite to reinstating discontinued disability benefits under the statute.

*Gronfur*, 2003 ND 42, ¶¶ 11–15, 658 N.W.2d 337 (footnote omitted).

[¶ 14] We specifically noted, because Gronfur conceded he made no attempt to find employment, we did not need to decide whether actual wage loss could be shown by a claimant's diligent efforts to obtain wages from employment. *Id.* at ¶ 12 n. 2. Similarly, Anna Bachmeier concedes Randy Bachmeier made no attempt to find employment after he was fired by Nordic Fiberglass.

[¶ 15] Much of Anna Bachmeier's argument on appeal focuses upon her contention that new medical evidence shows

Randy Bachmeier was disabled and unable to work both before and after he was fired from his employment in May 1996. In effect, Anna Bachmeier's argument challenges the accuracy of the Bureau's May 21, 1996, order finding Randy Bachmeier was able to work full time. When Randy Bachmeier withdrew his appeal from the May 21, 1996, order, however, that order became res judicata of his medical condition at that time, subject only to reopening under N.D.C.C. § 65–05–04. *See Rieniets v. North Dakota Workers' Comp. Bureau,* 512 N.W.2d 708, 710 (N.D.1994); *Lass v. North Dakota Workmen's Comp. Bureau,* 415 N.W.2d 796, 800 (N.D.1987). If new medical evidence showed Randy Bachmeier was disabled and unable to work at the time of the Bureau's May 21, 1996, order, the appropriate procedure would have been to seek a reopening of the original claim under N.D.C.C. § 65–05–04, which grants continuing jurisdiction over claims and authorizes the Bureau to award compensation that has previously been refused or discontinued.

[¶ 16] We conclude the Bureau interpreted and applied N.D.C.C. § 65–05–08(1) in accordance with the law and did not err in determining Randy Bachmeier had failed to show an actual wage loss. The district court judgment upholding the Bureau's order denying Randy Bachmeier's reapplication for disability benefits is affirmed.

[¶ 17] GERALD W. VANDE WALLE, C.J., ROBERT O. WEFALD, District Judge, concur.

[¶ 18] The Honorable ROBERT O. WEFALD, District Judge, sitting in place of KAPSNER, J., disqualified.

MARING, Justice, dissenting.

[¶ 19] I respectfully dissent.

[¶ 20] The Bureau argues that there is no "actual wage loss" because "there is no evidence of any attempt to seek or obtain employment at any point after he was terminated from his job. . . ." Again the Bureau argues "actual wage loss" can be established by showing an inability to obtain employment, which in turn can be proven by a job search and evidence of failure to secure a job based on the physical impairment caused by the work injury. As I stated in my dissent in *Gronfur,* it seems reasonable that an inability to obtain employment also can be proven by medical evidence that the employee is totally disabled from performing any work as a result of the physical impairment caused by the work injury. *Gronfur v. North Dakota Workers Comp. Fund,* 2003 ND 42, ¶¶ 17–20, 658 N.W.2d 337 (Maring, J., dissenting).

[¶ 21] The Bureau concluded Bachmeier had sustained a significant worsening of his compensable work condition sometime after his benefits were discontinued on March 20, 1996, and more than 30 days prior to his reapplication on July 13, 2000. The medical evidence in the record to support this finding of the Bureau includes a new L5–S1 disc herniation noted on the MRI and changes of degenerative disc disease attributable to the work injury and subsequent surgery, both of which can explain Bachmeier's increased symptomatology. The Bureau, however, never addressed the medical evidence establishing that Bachmeier was totally disabled as a result of his work injury and was unable to return to any work. Dr. Rayer testified Bachmeier was not capable of any full-time work and Dr. Bergom at Altru Clinic in Grand Forks, who performed a thorough evaluation for Social Security on May 26, 1999, concluded "[t]his gentleman is disabled for any job requiring prolonged standing, lifting, pushing, or pulling." Dr. Martire, in his letter of April 9, 2001, said there was no herniation at L5–S1 disc level on the 8/9/94 report, but there was a bulge. In his opinion, the difference between a bulge versus a herniation is just a matter

of degree of protrusion of the disc. He stated that the fact Bachmeier never had any significant relief of his left leg pain after surgery on 7/3/95 raised the possibility that his referred leg pain could have all along been due to an L5–S1 disc bulge, which has now herniated causing left S1 radiculopathy.

[¶ 22] I remain of the opinion that if an employee is unable to obtain employment because of total disability resulting from a work injury it can be proven through medical evidence and a job search is not required.

[¶ 23] I, therefore, dissent and would reverse the denial of total disability benefits.

[¶ 24] WILLIAM A. NEUMANN, J., joins the dissent.