2003 ND 188

**Ronald PAUL, Claimant and Appellant,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee.**

No. 20030199.

Supreme Court of North Dakota.

Dec. 2, 2003.

Steven L. Latham, Wheeler Wolf, Bismarck, for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Bismarck, for appellee.

NEUMANN, Justice.

[¶ 1] Ronald Paul appealed from a district court judgment, entered upon remand by this Court, affirming orders of February 13, 2001 and August 7, 2001 by Workforce Safety and Insurance ("WSI"),[1] approving a vocational rehabilitation plan for Paul and denying him further disability and vocational rehabilitation benefits. We hold WSI's proceedings were in accordance with this Court's directions in remanding the case, its findings of fact are supported by the evidence, and its decisions are in accordance with the law. We, therefore, affirm the district court judgment upholding both WSI orders.

I

[¶ 2] Many of the relevant facts are set forth by this Court in *Paul v. N.D. Workers Comp. Bureau*, 2002 ND 96, 644 N.W.2d 884, and will be reiterated here only as necessary to an understanding of this appeal. In August 1985 Paul sustained a low back injury during the course of his employment as a construction worker. WSI accepted liability and paid disability benefits and medical expenses to him. He has not worked since his 1985 injury. Paul underwent a functional capacity evaluation which indicated his lifting capabilities were 17.5 pounds "rarely" and 12.5 pounds "occasionally." The results of this evaluation indicated Paul was qualified for sedentary and light categories of work as defined by the United States Department of Labor's Dictionary of Occupational Titles ("DOT").

[¶ 3] Under N.D.C.C. § 65–05.1–01, WSI's vocational rehabilitation consultant developed a rehabilitation plan for Paul to return to work in the Phoenix area, where he currently resides. The rehabilitation consultant concluded there were sufficient job opportunities in the Phoenix area as a sales attendant, service establishment counter attendant, and automobile rental clerk which satisfied Paul's physical restrictions and the requirements of the statute. WSI accepted the rehabilitation consultant's plan and issued an order on February 13, 2001, denying Paul further

---

1. The 2003 Legislature changed the title of the North Dakota Worker's Compensation Bureau to Workforce Safety and Insurance. *See* 2003 N.D. Sess. Laws ch. 561; N.D.C.C. § 65–02–01.1.

disability and vocational rehabilitation benefits. Paul requested and received a formal hearing before an administrative law judge ("ALJ"). After holding a formal rehearing, the ALJ found the job descriptions for sales attendant, service establishment counter attendant, and automobile rental clerk required a person to lift up to 20 pounds, which exceeded Paul's lifting abilities. The ALJ stated that, because of the number of openings for those jobs in the Phoenix area and because the descriptions did not describe lifting as a principle or significant activity, it was presumed job opportunities existed for Paul and the burden was on him to show there were not. The ALJ concluded Paul had not met the necessary showing and, therefore, the rehabilitation plan was appropriate and Paul was not entitled to further disability benefits.

[¶ 4] In *Paul v. N.D. Workers Comp. Bureau*, 2002 ND 96, ¶¶ 11–12, 644 N.W.2d 884, this Court rejected the ALJ's decision process:

> The ALJ erroneously relied on a presumption there were sufficient job opportunities in the Phoenix area within Paul's physical limitations, and erroneously shifted the burden of proof to Paul to show there were not job opportunities. The presumption and burden shifting are not in accordance with the law and adversely impacted the Bureau's ultimate findings about the rehabilitation plan. The Bureau's decision must be based on evidence presented at the hearing which establishes a rehabilitation plan that provides Paul with a reasonable opportunity for employment within his restrictions and without the aid of a presumption or shifting the burden of proof to Paul. We conclude the Bureau's ultimate decision was affected by its erroneous reliance on the presumption that there were employment opportunities for Paul in the Phoenix

area, and the shifting of the burden of proof to him to show there were not employment opportunities.

. . . .

We reverse the judgment and remand for proceedings consistent with this opinion.

[¶ 5] In separate but related proceedings, Paul reapplied on January 2001 for disability benefits, explaining that he had experienced increased back and hip pain and was about to go undergo lumbar surgery. Dr. James H. Maxwell performed back surgery upon Paul on January 29, 2001 and as of that date WSI reinstated temporary total disability payments. Paul recuperated and Dr. Maxwell released him to full-time work at a light level. As of July 2, 2001, WSI discontinued disability benefits for Paul, and he submitted a request for reconsideration. On August 7, 2001 WSI issued an order denying further benefits, concluding that Paul had been medically released and returned to work at the same level as the job goals outlined in the initial rehabilitation plan which was affirmed by the February 13, 2001 order. Paul requested a formal hearing to contest the August 7, 2001 order.

[¶ 6] A hearing was held on October 10, 2002 at which the ALJ reconsidered the evidence relating to the initial order denying further disability benefits and also took additional evidence in considering the August 7, 2001 order denying Paul further disability benefits after they had been reinstated in January 2001. The ALJ decided the initial rehabilitation plan was appropriate because it offered Paul a reasonable opportunity to obtain substantial gainful employment. The ALJ also decided that, because Paul had recovered from his latest surgery to a level of functioning at least equivalent to his abilities when the initial order was entered, the rehabilitation plan

remained appropriate for Paul. The ALJ recommended that the rehabilitation plan be approved and disability benefits be discontinued. WSI adopted the ALJ's recommendations, Paul appealed to the district court, and that court, after hearing, upheld WSI's orders denying benefits. Paul then appealed to this Court.

## II

[¶ 7] On appeal Paul asserts WSI did not properly follow this Court's instructions in *Paul v. N.D. Workers Comp. Bureau*, 2002 ND 96, ¶¶ 11–12, 644 N.W.2d 884. Paul argues this Court's remand required WSI to invalidate the initial rehabilitation plan and develop a new one after holding a new evidentiary hearing to test the validity and appropriateness of the plan. The ALJ rejected Paul's interpretation of this Court's remand, stating:

> [Paul's] interpretation of this quoted language is that the Court implicitly found the vocational rehabilitation plan to be invalid because the ALJ was able to sustain its validity only by employing an impermissible "presumption" that there were sufficient job opportunities in the Phoenix area within Paul's physical limitations. I am unable to agree with that interpretation.... I interpret the Court's opinion as simply requiring a reassessment of the evidence without invoking the impermissible presumption, followed by such recommended findings of fact and conclusions of law as that evidence, free from such presumption and burden-shifting, should produce.

[¶ 8] WSI adopted the ALJ's reasoning and we concur with it. In remanding the case, this Court stated in *Paul*, 2002 ND 96, ¶ 11, 644 N.W.2d 884 "the Bureau's decision must be based on evidence presented at the hearing which establishes a rehabilitation plan that provides Paul with a reasonable opportunity for employment within his restrictions and without the aid of a presumption or shifting the burden of proof to Paul." We did not specifically remand for an evidentiary hearing but, rather, remanded for further proceedings, wherein we directed WSI to make its decision based upon the evidence and not upon an erroneous presumption which would shift the burden for Paul to prove that appropriate jobs did not exist for him in the Phoenix area. We conclude the process used by WSI upon remand was appropriate and in accordance with our directions.

## III

[¶ 9] The vocational rehabilitation legislation under N.D.C.C. § 65–05.1–01 was designed to return an injured employee to substantial gainful employment as quickly and with as little retraining as possible. *Lucier v. N.D. Workers Comp. Bureau*, 556 N.W.2d 56, 59 (N.D.1996). The critical factual issue in this case is whether the rehabilitation plan identified jobs within Paul's physical limitations for lifting so as to provide Paul with a reasonable opportunity for employment. Following the October 10, 2002 hearing, the ALJ made extensive findings and conclusions on this issue:

> Vocational consultant, Kelly Kraus testified at Mr. Paul's January 3, 2001 hearing, consistent with her March 15, 2000 Vocational Consultant's Report ... that in developing a vocational rehabilitation plan for Mr. Paul, she ultimately identified three occupations, sales attendant, service establishment counter attendant, and automobile rental clerk, that she determined to be performable by him, and which otherwise fulfilled the statutory criteria for "substantial gainful employment."
>
> . . . .
>
> Ms. Kraus ... wrote Dr. Shapiro on March 15, 2000, enclosing the pertinent

DOT occupational description and occupation demands information and asked whether he approved Mr. Paul performing the occupations of sales clerk, counter attendant, and rental clerk.... Dr. Shapiro responded on March 27, 2000, checking "yes" for each occupation.

. . . .

Ms. Kraus testified again at Mr. Paul's October 10, 2002 hearing.... With regard to the occupation of sales attendant, she testified that she had called five retail businesses, and that four of the five indicated that they didn't have a lifting requirement and that there was assistance available for employees who might have difficulty lifting, and that one business indicated that it did not provide accommodation for lifting and carrying.... With regard to the occupation of automobile rental clerk, she stated that she had called one business, and was told that lifting was basically paperwork and that they had assistance available.... With regard to the occupation of counter attendant, she testified that she had called three dry cleaners and was told that the job involves lifting between 10 and 40 pounds, that only on rare occasion is anything over 20 pounds lifted, and that there is assistance available from co-workers for lifting activities.

. . . .

[B]ecause Dr. Maxwell's opinion is that Mr. Paul is capable of returning to work with restrictions that are no greater than those established before his January 2001 back surgery, and there is no contrary medical evidence in the record, the greater weight of the evidence supports a finding that Mr. Paul's functional capacity has not significantly changed since the August 1999 FCE, the existing vocational rehabilitation plan, as found in Ms. Kraus's March 15, 2000 Vocation-

al Consultant's Report . . . and approved by the Bureau, remains viable and appropriate for him.

The ALJ made the following specific findings and recommendations which were adopted by WSI:

The greater weight of the evidence shows that most jobs in the occupations of sales attendant, service establishment counter attendant, and automobile rental clerk in the Phoenix, Arizona area would not entail lifting that exceeds Mr. Paul's FCE lifting maximums, and that employers of persons in those occupations in the Phoenix, Arizona area regularly accommodate workers with lifting restrictions such as those of Mr. Paul.

. . . .

The greater weight of the evidence shows that Mr. Paul's physical capacity and work limitations since July 2, 2001 are essentially the same as they were at the time his vocational rehabilitation plan was developed, and, therefore, that plan, including the occupations identified for him, remains viable. Therefore, the Bureau's August 7, 2001 "Order Denying Further Benefits," finding that he was able to return to work at the same level as the job goals outlined in the Vocational Rehabilitation Report of March 15, 2000, and terminating Mr. Paul's disability benefits after July 2, 2001, is found to be supported by a preponderance of the evidence on that issue.

. . . .

The vocational plan developed for Mr. Paul met, and continues to meet, the goal of returning him to "substantial gainful employment" within the scope and intent of NDCC § 65–05.1–01(3).

The evidence shows, by a preponderance thereof, that the occupations identified in the vocational rehabilitation plan developed for Mr. Paul and approved by

the Bureau, satisfied, and continue to satisfy, his physical limitations for lifting.

[¶ 10] Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

The district court concluded WSI's findings were supported by a preponderance of the evidence and upheld the decision to terminate benefits.

### IV

[¶ 11] On appeal from the district court ruling on an administrative agency decision, this Court reviews the agency's order in the same manner. N.D.C.C. § 28–32–49. We review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Bachmeier v. N.D. Workers Comp. Bureau,* 2003 ND 63, ¶ 10, 660 N.W.2d 217. We exercise restraint in deciding whether the agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Id.* We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Id.*

[¶ 12] WSI, upon remand by this Court, held further proceedings and reviewed the appropriateness of Paul's rehabilitation plan, without using an erroneous presumption that there must be jobs which fit within Paul's functional capacity. WSI found there are jobs which Paul is capable of performing, relying on testimony of its vocational consultant, who contacted specific employers and identified available jobs which did not require lifting or other functions beyond those which Paul's doctors had released him to perform. In addition, there was evidence of available job opportunities for positions which could require lifting in excess of Paul's capacities, but specific employers indicated a willingness to make accommodations for an employee so that excessive lifting would not be required. WSI expressly found the greater weight of the evidence shows that most jobs in the occupations of sales attendants, service establishment counter attendant, and automobile rental clerk in the Phoenix area would not entail lifting that exceeds Mr. Paul's lift maximums and that Paul's treating doctor, William Shapiro, approved Paul's ability to perform in those occupations. We conclude WSI's findings

on this issue are supported by the record evidence.

[¶ 13] In addition, WSI accepted additional evidence at the October 10, 2002 hearing regarding Paul's functioning and work capabilities subsequent to the worsening of his condition and his latest surgery. WSI found that following recuperation from the surgery, Paul's surgeon approved of Paul returning to light duty work, stating that he was capable of working on a full-time basis with no repetitive bending or lifting of more than 20 pounds. WSI found that the available job opportunities in the initial plan were within Paul's existing work capabilities following his recuperation from the latest surgery, and, therefore, the rehabilitation plan remained viable and appropriate for Paul. We also conclude those findings by WSI are supported by the record evidence.

[¶ 14] WSI decided the vocational plan developed for Paul meets the goals of returning him to substantial gainful employment within the meaning and intent of N.D.C.C. § 65–05.1–01(3). That conclusion is supported by its findings. We conclude, therefore, WSI's orders approving WSI's rehabilitation plan for Paul and denying him further disability benefits are based upon findings supported by a preponderance of the record evidence, its conclusions are supported by the findings, and its decisions are in accordance with the law. We, therefore, affirm the district court judgment upholding WSI's orders.

[¶ 15]GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.